462 P.2d 139

**Eldon D. YOUNG, Petitioner-Appellee,**

v.

**The BOARD OF PHARMACY for the State of New Mexico, Respondent-Appellant.**

**No. 8759.**

Supreme Court of New Mexico.

Dec. 8, 1969.

**6**

James A. Maloney, Atty. Gen., John D. Donnell, Special Asst. Atty. Gen., Santa Fe, for appellant.

Easley & Reynolds, Hobbs, for appellee.

## OPINION

MOISE, Chief Justice.

Appellee was given notice to show cause before the Board of Pharmacy for the State of New Mexico, appellant here, as to why his license to practice pharmacy should not be revoked on the grounds that he "wilfully and unlawfully sold without a prescription certain dangerous drugs * * * and further that he conducted himself in an unprofessional manner in not keeping accurate records and inventory of depressant and stimulant drugs as required by law."

After a hearing at which appellee was present and represented by counsel, the appellant board made findings of fact, and based thereon entered an order revoking appellee's license as a pharmacist. Appellee thereupon sought review in the district court as provided in § 67–26–17 to 67–26–20, N.M.S.A. 1953, inclusive, complaining specifically of the appellant board's findings of fact 4, 5 and 6 and conclusions of law 1 and 2. These findings and conclusions read:

Findings:

"4. On or about March 24, 1967 the respondent wilfully and unlawfully sold without prescription certain dangerous drugs as defined by the Federal Food and Drug Laws.

"5. On or about March 25, 1967 the respondent wilfully and unlawfully sold without prescription certain dangerous drugs as defined by the Federal Food and Drug Laws.

"6. The respondent has conducted himself in an unprofessional manner by not keeping adequate records and inventory of depressant and stimulant drugs as provided by law."

Conclusions:

"1. By virtue of the facts as found by the board above, the respondent, Eldon D. Young, conducted his pharmacy in violation of the Federal Food and Drug Laws.

"2. That the respondent, Eldon D. Young, was guilty of unprofessional conduct."

The trial court proceeded to review the decision of the appellant as provided in § 67–26–20, N.M.S.A.1953, following which, written findings of fact and conclusions of law were filed and appellant's order was set aside and held for naught for the stated reason that the findings of fact, quoted above, were not supported by substantial evidence, and the conclusions of law were not supported by any findings of fact or sustained by competent evidence and were "unreasonable, arbitrary and unlawful."

Appellant prosecutes this appeal from the district court decision, as provided in § 67–26–23, N.M.S.A.1953. Although stated as one point, two separate issues are presented. The first question is whether there is substantial evidence here to support findings 4 and 5, above set forth.

The problem arises by virtue of the facts which we relate. On each of the two dates in question (March 24 and March 25, 1967) one Rudy Montoya went into appellee's store and, although he had no prescription from a doctor, requested some penicillin. In compliance with the request, appellee delivered an unmarked and unlabeled bottle containing some pills to Mr. Montoya, and received pay for them. These pills in the unmarked container were in turn delivered by Mr. Montoya to a deputy sheriff by the name of Gill who testified that he placed identifying marks thereon and sent them to the Food and Drug Administration; that in due time he received the containers back, together with a letter

stating that the pills contained therein were penicillin. Appellee objected to the introduction of the pills and containers because of asserted failure to present witnesses who could account for continuous possession as a foundation asserted to be required before such articles may be received in evidence. The period not covered was that from the time officer Gill mailed the containers until they were returned to him. In whose possession and through whose hands had they passed in the interim? Appellee objected to introduction of the letter because of its hearsay nature, the author not being available for examination or cross-examination.

Appellant answers by directing attention to § 67–26–11, N.M.S.A.1953, applicable to the hearing before it. That section reads:

"In proceedings held under the Uniform Licensing Act [67–26–1 to 67–26–28], boards may admit any evidence and may give probative effect to evidence that is of a kind commonly relied on by reasonably prudent men in the conduct of serious affairs. Boards may in their discretion exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. In proceedings involving the suspension or revocation of a license, rules of privilege shall be applicable to the same extent as in proceedings before the courts of this state. Documentary evidence may be received in the form of copies or excerpts. Boards may take notice of judicially cognizable facts and in addition may take notice of general, technical or scientific facts within their specialized knowledge. The person whose license is involved shall be notified either before or during the hearing of the material so noticed and shall be afforded an opportunity to contest the facts so noticed. Boards may utilize their experience, technical competence and specialized knowledge in the evaluation of evidence presented to them. Depositions may be taken and used as in civil proceedings."

There can be no question that under § 67–26–11, supra, the evidence was admissible and, if "of a kind commonly relied on by reasonably prudent men in the conduct of serious affairs," may be given "probative effect." Section 67–26–20, N. M.S.A.1953, reads as follows:

"Upon the review of any board decision under the Uniform Licensing Act [67–26–1 to 67–26–28], the judge shall sit without a jury, and may hear oral arguments and receive written briefs, but no evidence not offered at the hearing shall be taken, except that in cases of alleged omissions or errors in the record, testimony thereon may be taken by the court. The court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: in violation of constitutional provisions; or in excess of the statutory authority or jurisdiction of the board; or made upon unlawful procedure; or affected by other error of law; *or unsupported by substantial evidence on the entire record as submitted*; or arbitrary or capricious." (Emphasis supplied.)

We defined substantial evidence, in Wilson v. Employment Sec. Comm'n, 74 N.M. 3, 389 P.2d 855 (1963), as:

" * * * more than merely any evidence and more than a scintilla of evidence and contemplates such relevant legal evidence as a reasonable person might accept as sufficient to support a conclusion."

See McWood Corporation v. State Corporation Commission, 78 N.M. 319, 321, 431 P.2d 52 (1967).

In State v. Scott, 111 Utah 9, 175 P.2d 1016, 1021 (1947), is found a discussion of the nature of "probative evidence" which we consider helpful. We quote:

"The basic rule of admissibility of evidence is that all evidence having probative value—that is, that tends to prove

an issue, is admissible. In countries where the civil law prevails that is clearly recognized. But in the common law there were developed certain exceptions to that basic rule, for example, the hearsay rule, which made certain evidence, though relevant and material, incompetent. That was because of the danger of prejudice to the party against whom it was offered who would have no chance to cross-examine the source, or the probative value of the evidence offered was small as compared to the great prejudicial effect it might have. So-called 'exceptions to the hearsay rule' are really not exceptions to the hearsay rule which is itself an exception to the basic rule of admissibility, but are in reality limitations on the hearsay exception. * * *"

In Akin v. Estate of Hill, 201 Kan. 306, 440 P.2d 585 (1968), a presumption recognized in law was held not to have "probative value" under the facts there present, notwithstanding a statute giving such effect to certain presumptions. For two New Mexico cases discussing the treatment of presumptions as proof see Teeter v. Miller, Smith & Jones, 66 N.M. 49, 342 P.2d 864 (1959), and Hartford Fire Insurance Co. v. Horne, 65 N.M. 440, 338 P.2d 1067 (1959).

Liquor Control Commission v. Bartolas, 10 Ohio Misc. 225, 225 N.E.2d 859, 862 (1963), discusses the terms "probative evidence," "probative value," and "substantial evidence" in a case involving suspension of a permit to sell liquor. We quote therefrom:

"Probative evidence is testimony of substance and relevant consequence not vague or uncertain, but having the quality of proof or fitness to induce conviction of truth, and has reference to the substance of the testimony generally and not the credibility of the witness, though credibility is involved where testimony is directly opposed to physical possibilities or scientific facts. (Louisville & N. Railroad Co. v. Lefever's Adm'x, 288 Ky. 195, 155 S.W.2d 845.)

"Evidence has 'probative value' if it tends to prove an issue. (State v. Scott, 111 Utah 9, 175 P.2d 1016.)

"Under these definitions the finding of the Commission is supported by probative evidence."

Commonwealth, Department of Highways v. Tyree, 365 S.W.2d 472 (Ky.1963), involves application of the rule in connection with opinion evidence of value offered in a condemnation case.

In Stammer v. Board of Regents of University of State of New York, 287 N.Y. 359, 365, 39 N.E.2d 913, 915 (1942), the Court of Appeals of New York, in reviewing proceedings of an administrative board suspending a physician's license to practice medicine, held that hearsay evidence although admissible by law is not evidence of a probative character. See, also, Magee v. New York State Liquor Authority, 13 A.D.2d 649, 214 N.Y.S.2d 1 (1961).

The doctrine enunciated by the cases cited, although possibly not couched in identical terms, is what has been commonly described as the "legal residuum" rule enunciated in Carroll v. Knickerbocker Ice Co., 218 N.Y. 435, 113 N.E. 507 (1916), and followed in at least twenty-one jurisdictions in this country, even since 1946 when the Model State Administrative Procedure Act was promulgated. See 1 Cooper, State Administrative Law, 406.

Under the "legal residuum" rule it is generally considered that a finding is not substantially supported absent the presence of at least a residuum of evidence competent under the exclusionary rules. As an example, there is no substantial support for a finding if there is no evidence in support except hearsay. 1 Cooper, supra, at 405.

Many of the jurisdictions that apply the "legal residuum" rule have based their administrative procedures upon the Model State Administrative Procedure Act (1946), as did New Mexico. The section dealing with evidence [9(1)] is substantially the same as § 67-26-11, supra. Even though the Model Act language, as ours, calls for the giving of "probative effect" to evidence

(including hearsay), most states have continued to require a residuum of competent evidence. 1 Cooper, supra, at 406.

■ We deem the continued requirement of some competent evidence a sound one; for in administrative adjudications where a person's livelihood (a property right) is at stake, any action depriving him of that property must be based upon such substantial evidence as would support a verdict in a court of law.

■ Thus we conclude that notwithstanding the fact the evidence in question here was admissible and entitled to "probative effect" it was not of that quality, certainty and credibility, standing alone, to support findings 4 and 5 quoted, above. We cannot escape the conclusion that there was a failure to establish the nature of the pills sold, or whether a prescription was required by law. The trial court did not err in its holding that findings 4 and 5 were not supported by substantial evidence; were accordingly arbitrary and capricious; could not furnish support for a conclusion of law; and should be set aside. Compare McWood Corporation v. State Corporation Commission, 78 N.M. 319, 431 P.2d 52 (1967).

The conclusion which we have reached as hereinabove stated conforms with the rule stated by Davis in his Administrative Law Treatise, § 14.10:

> "It appears to be well established that, in proceedings to revoke a license to conduct a business or profession, where, by law, the licensee is entitled to a hearing before the licensing authority, revocation based solely upon hearsay evidence is unwarranted."

See, also, Forkosch, Administrative Law, § 247 (1956); 1 Cooper, supra, at 404.

We next consider finding 6 and the question of the adequacy of proof of unprofessional conduct by virtue of failure to keep "adequate records and an inventory of depressant and stimulant drugs as provided by law," as well as the conclusion that such conduct, if established, amounted to unprofessional conduct and violation of Federal Food and Drug Laws.

In weighing the issue here presented, we keep in mind that the finding does not involve illegal sales but is limited to record-keeping. We are called upon to determine (1) if in fact appellee failed to keep records required by the Federal Food and Drug Laws; (2) if he failed, was it necessary to establish this was done intentionally, as opposed to negligently; and (3) could it constitute "unprofessional conduct," a ground for revocation contained in § 67–9–11, N.M. S.A.1953 (since repealed), without a regulation having been adopted by the Board of Pharmacy specifically providing that it could have this effect?

■ We answer the third question first. Authority would seem to support appellant in its assertion that a board may generally suspend or revoke a license to practice a profession for "unprofessional conduct" without its being required to first specify by regulation or rule, exactly what acts may be so considered. See Bell v. Board of Regents of University of State of New York, 295 N.Y. 101, 65 N.E.2d 184, 163 A.L.R. 900 (1946); Wasserman v. Board of Regents of University of State of New York, 11 N.Y.2d 173, 227 N.Y.S.2d 649, 182 N.E.2d 264 (1962); In re Mintz, 233 Or. 441, 378 P.2d 945 (1963). We also note that there is law to the contrary. See Kentucky State Board of Dental Examiners v. Crowell, 220 Ky. 1, 294 S.W. 818 (1926). It should be obvious that it would not be every prohibited act, regardless of its nature, that could be considered unprofessional conduct. However, undoubtedly, certain activities would be so clearly of a character as to be so classified.

■ In State Board of Dental Examiners v. Savelle, 90 Colo. 177, 8 P.2d 693, 82 A. L.R. 1176 (1932), "unprofessional conduct" is said to be "convertible with 'dishonorable'" and, further, it is stated that it means "that which is by general opinion considered to be grossly unprofessional because immoral or dishonorable as distinguish from a mere violation of a code of

professional ethics, prescribed by a board of health." See, also, In re Mintz, supra. That under certain circumstances the test may be different is equally certain. Compare In re Nelson, 79 N.M. 779, 450 P.2d 188 (1969). .

How should appellee's conduct be characterized? Clearly, he had insufficient and faulty records and had been warned concerning them. However, 21 U.S.C.A. § 360a(d) (1), being the section of the Food and Drug Laws relied on by appellant, does not require any "separate records, nor set form or forms." That section states specifically that nothing is "required as long as records containing the required information are available." It provides that a complete and accurate record of the kind and quantity of each depressant or stimulant drug "received, sold, delivered, or otherwise disposed of, the name and address of the" source from which purchased, and of the person to whom disposed of, and the date of the disposition, shall be kept for a period of three years.

■ The proof here disclosed that an inspector for appellant asked and received appellee's records, such as they were, including an inventory, invoices for drugs received, and prescription files. The inspector inventoried a total of some 96 depressant and stimulant drugs in appellee's possession and noted considerable in the way of shortages in certain of them. However, it also appears in the records that as to certain drugs, more had been disposed of than had been acquired. What this establishes is a failure to keep accurate records. Does it prove "unprofessional conduct" as that term is described in the quotation from State Board of Dental Examiners v. Savelle, supra? We are constrained to conclude that it does not. To our minds, the keeping of records both as to income and disbursements, as well as of purchases and sales of products, are absolute requirements in any business. It is a necessity under the law in most businesses. Although a particular reason is present where drugs are involved, as here, we fail to see why

accurate record-keeping should be a test of a man's professional character. This is particularly true when there is no showing that shortcomings did not result from some improper or unlawful reason or purpose, as distinguished from negligence. We do not see in the action of appellee, proven before appellant, conduct which by general opinion can be classed as so grossly unprofessional because immoral or dishonorable as to support a denomination of "unprofessional conduct." It follows that the trial court did not err in holding finding of fact No. 6 to be arbitrary and unlawful, and the appellant's conclusions to be unsupported.

Finding the trial court's judgment free from error, it is affirmed. It is so ordered.

TACKETT and WATSON, JJ., concur.