SCEVERS, *Petitioner,*

*v.*

EMPLOYMENT DIVISION et al, *Respondents.*

(No. 76-2663, CA 5792)

554 P2d 575

*Julie A. Stevens,* North Bend, argued the cause for petitioner. With her on the brief was Coos-Curry Counties Legal Aid, Inc., North Bend.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Lee

Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

No appearance for respondents Hale and Rudin, dba Hale & Rudin Stationery Store.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

Claimant appeals the decision of the Employment Appeals Board which denied him unemployment benefits under ORS 657.176(2)(a) on the ground that he was discharged for misconduct.

The essential facts are as follows:

Claimant was employed as an apprentice office machine repairman from September 21, 1974 until September 22, 1975. During this period claimant was absent a total of 31 days due to illness. Respondent employer does not claim that these illnesses were unexplained or feigned or that claimant failed to give proper notice.

Claimant was ill September 23 and 24, 1975. On September 25 and 26 claimant's children were ill with measles. Claimant called his employer and said that he would not report because he was caring for his children while his wife worked. Respondent employer discharged claimant when he reported for work on September 29, 1975.

Testimony of the employer before the referee shows that claimant was discharged for continual absenteeism culminating in the absences on September 25 and 26, 1975.

At the hearing before the referee the following colloquy occurred:

"Q  When did yourself and Mr. Hale [employers] first make the decision to discharge Mr. Scevers? Now, he'd been missing work that week.

"A  I think the decision was made sometime after he phoned in the 25th that he was able to work but he had sick children and couldn't come to work. I felt that we couldn't live with a situation where the family was taking continuous precedence over the job. If—it was a situation where his wife couldn't take care of the family and it was his obligation to take care of sick children—that it didn't fit in our permanent plans. We run a short crew and I

just—we just can't live with that situation. And I think the decision was made then probably on the 25th or 26th.

"Q You said—now then—only one point I'm not clear—you said that if his wife could not have taken care of the children then you might not have discharged him?

"A Had he been a—yes, if he had sick children at home and it was his obligation to stay home and take care of them, that was the situation we couldn't live with.

"Q I see.

"A Generally, the man of the household gets to work.

"Q Had you ever warned Mr. Scevers that he—his absenteeism was presenting a serious problem to the employer?

"A I don't think I'd ever done it in a formal manner, but Ed was well aware. In my opinion, Ed was well aware that I was unabsent (sic)—I was unhappy with his absentee record."

From the facts outlined above, the Appeals Board concluded that:

"* * * Claimant was discharged for misconduct in connection with his work. The disqualifying act committed by claimant was his failure to report to work when he was able to after the excused absences on the 23rd and 24th of September. Although the claimant may have felt it was necessary to remain at home with his ill children, there has been no showing that alternative child care was not available to him or that he even investigated that possibility. It would appear that an employee with a record of absenteeism such as that possessed by the claimant would appear for work on every day that he was physically able to do so, and the failure of the claimant to do so on the 25th and 26th of September is in conscious disregard of the employer's interest."

The issue before the referee and the Appeals Board was whether claimant's conduct constituted "misconduct" within the meaning of the term as used in ORS 657.176(2)(a).

In *Geraths v. Employment Division,* 24 Or App 201, 544 P2d 1066 (1976), we quoted the following language from 76 Am Jur2d 945, 946, § 52 (1975), with approval:

"* * * The statutory term 'misconduct' should not be

so literally construed as to effect a forfeiture of benefits by an employee except in clear instances; rather, the term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception. * * *"

Generally, where there is compliance with the employer's rules regarding absence due to illness, discharge because of absence for reasons of health does not justify withholding unemployment benefits for misconduct within ORS 657.176(2)(a). *Flynn Unempl. Compensation Case [Crib Diaper Service],* 174 Pa Super 71, 98 A2d 490 (1953); 76 Am Jur2d 954, 955, § 58 (1975). *See also,* Annotation, *Discharge for Absenteeism or Tardiness as Affecting Right to Unemployment Compensation,* 58 ALR3d 674 (1974).

Employer's contention that claimant's refusal to work two days while his children recovered from measles constituted misconduct likewise cannot be supported.

In a similar case the Supreme Court of Arkansas held that it would be contrary to good conscience to impose a disqualification where claimant left work to care for children who had contracted measles. *See, Wade v. Thornbrough, Comm. of Labor,* 231 Ark 454, 330 SW2d 100 (1959). We agree. *See also, Lacombe v. Sharpe,* 99 So2d 387 (La App 1957); *Kelleher Unempl. Compensation Case,* 175 Pa Super 261, 104 A2d 171, 41 ALR2d 1155 (1954).

The Appeals Board apparently gave weight to the conclusion that

"* * * there has been no showing that alternative child care was not available to him or that he even investigated that possibility. * * *"

We held in *Babcock v. Employment Division,* 25 Or App 661, 550 P2d 1233 (1976), that the burden of proof was on the employer to establish grounds for misconduct by a reasonable preponderance of the evidence. No testimony germane to the issue of the availability of

alternative child care was adduced by either side at the hearing and the referee apparently did not consider it. The only reference in the record on the issue of alternative child care is the following statement made by claimant to the administrator and recorded on his Fact Finding Report Work Separation Form 359C:

"* * * My wife makes more than I do and works Thursdays and Fridays so we decided I was the best choice to stay home and care for the kids. Our babysitter had quit the week before. She wouldn't have been expected to care for them with the measles even if she had continued. * * *"

Even assuming that a failure to explore alternative child care under these circumstances amounted to misconduct, the lack of testimony at hearing on the issue coupled with claimant's statement in his initial interview precludes a finding against him on this ground.

Reversed.

**SCHWAB, C. J.,** concurring.

It seems to me clear that in this case both the employer and the Employment Appeals Board found that the father's decision to stay home with his ill children constituted misconduct warranting discharge only because he was the father of the children and not the mother. I agree that this form of reverse discrimination is against public policy. I would note, however, that there could well be instances where the duties of a parent, mother or father, would so conflict with the duties of an employe as to warrant discharge from employment.