587 P.2d 1252

Nancy E. WESTON, Claimant-Appellant,

v.

GRITMAN MEMORIAL HOSPITAL, Employer,

and

Department of Employment, Defendants-Respondents.

No. 12643.

Supreme Court of Idaho.

Dec. 20, 1978.

718

Frederick G. Loats, Coeur d'Alene, for claimant-appellant.

Cope R. Gale, Moscow, for respondent-employer.

R. LaVar Marsh, Deputy Atty. Gen., Roger B. Madsen, Asst. Atty. Gen., Boise, for respondent Dept. of Employment.

HARGRAVES, Justice Pro Tem.

Claimant was hired in January of 1974 by Gritman Memorial Hospital in Moscow, Idaho for employment as a surgical nurse with duties in the operating room. Claimant had had no prior experience as a surgical nurse and had to be trained for this position by the hospital. Her normal duty hours were from 7:00 a. m. until 3:30 p. m., though claimant and other nurses serving in surgery were permitted to leave after the last surgery was completed, which would frequently be at about noon; however, in any case they were paid for 8½ hours each workday.

The surgical department of Gritman Memorial Hospital had a "policy manual"

which set forth generally the operating room procedures and the duties of the respective personnel. Any revisions in the manual were discussed with the nurses prior to the implementation and in all cases the manual was available to all nurses, including the claimant.

It was a requirement of employer that operating room personnel be in the room promptly at 7:00 a. m., ready to commence pre-surgery duties. This rule was contained in the "policy manual." During the two years claimant was employed by Gritman she was late for work on many occasions. She had been admonished about this problem by her supervisor and counseled that such conduct would not be further tolerated. Finally, on January 5, 1976, claimant was again late for work and at that time was informed by the supervisor that she was terminated from the surgery department effective January 20, 1976. The reasons given for such termination were continued tardiness, being "flippant" with doctors and a general lack of interest (in her work).

After receiving the termination notice of January 5, 1976, but before the effective date of such termination, claimant was offered a job on the "second floor" of Gritman, which included departments of obstetrics, ophthalmology and gynecology, to commence on January 20, 1976. Claimant declined the offer.

Sometime following the 20th day of January, 1976, claimant filed for unemployment benefits under the Employment Security Law, but her claim was denied, for the reason that she had voluntarily left her job without good cause. A request for a redetermination was made and the Department of Employment submitted the matter to an appeals examiner who set a hearing date of April 20, 1976, at which time claimant failed to appear, apparently because of failure to receive notice. Subsequently, the Industrial Commission remanded the matter to the Department of Employment and additional hearings were conducted in Spokane, Washington on July 8, 1976 and in Moscow, Idaho on October 1, 1976. These

hearings resulted in a decision of an appeals examiner generally denying claimant's right to unemployment benefits. Upon request of claimant, the Industrial Commission ordered a "hearing on review" for the 18th day of April, 1977, in Moscow, Idaho. Following this review before a referee, an order was issued affirming the decision of the appeals examiner, which denied benefits, and said order, together with findings of fact and conclusions of law in support thereof, were approved, confirmed and adopted by the Industrial Commission on the 10th day of May, 1977. This order denied benefits on the ground claimant was discharged for misconduct. The appeal to this Court followed.

■ It has long been the rule in Idaho that findings of fact made by the Industrial Commission in unemployment cases will be sustained on appeal if supported by substantial and competent evidence.[1]

■ "Misconduct," which will disqualify a claimant from receiving unemployment benefits under the Employment Security Act, and specifically I.C. § 72–1366(e), means, "wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees."[2]

Some of the testimony pertinent to the question of "misconduct" given by the supervisor of surgery at Gritman follows:

Q. . . . what specific orientation did you give the claimant regarding the time she was to report to work . . .

A. . . . that they (nurses) be at the department at 7:00 (a. m.) dressed ready for work . . .

Q. And what did you experience with the claimant . . .?

A. Okay. She came in late, not every day, but she came in late, oh, three or four times a month. And I spoke to her numerous times I evaluated her numerous times about coming in late and spoke to her some more . .

Q. What was so critical about so many in the operating room being there scrubbed ready to perform at 7:00?

A. Because we have a schedule to meet. The doctors start coming, our patients come up at certain times. The whole crew works as a team and when one member is gone, then the rest of the crew have to pick up the work for her. And this happened with Nancy.

and:

A. Because the whole function of the team is that everybody is there and doing their job. The assignments are made the night before and what their job is going to be. If she's not there to start her assignment and someone else has to do it, which means that a person has to drop whatever they are doing to do what she was supposed to be doing.

. . . Nancy knew when the patient goes to sleep she was to stand by the anesthetist and be ready for anything that may happen. (but) Nancy was out getting supplies, wandering around, taking a coffee break when she should have been standing there when the patient was asleep.

Employer introduced other testimony to the effect that claimant, when admonished, did not take the matter seriously; that claimant, instead of performing her duties,

---

1. *Avery v. B & B Rental Toilets,* 97 Idaho 611, 549 P.2d 270 (1976); *Clay v. Crooks Industries,* 96 Idaho 378, 529 P.2d 774 (1974); *Levesque v. Hi-Boy Meats, Inc.,* 95 Idaho 808, 520 P.2d 549 (1974); *Toland v. Schneider,* 94 Idaho 556, 494 P.2d 154 (1972); *Alder v. Mountain States Telephone & Telegraph Co.,* 92 Idaho 506, 446 P.2d 628 (1968).

2. *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 307 P.2d 217 (1957); *Watts v. Employment Security Agency,* 80 Idaho 529, 335 P.2d 533 (1959); *Rasmussen v. Gem State Packing Co.,* 83 Idaho 198, 360 P.2d 90 (1961); *Custom Meat Packing v. Martin,* 85 Idaho 374, 379 P.2d 664 (1963) n. 3; *O'Neal v. Employment Security Agency,* 89 Idaho 313, 404 P.2d 600 (1965); *Oliver v. Creamer Heating & Appliance,* 91 Idaho 312, 420 P.2d 795 (1966).

would "fiddle around;" that "she liked to have a lot of fun in surgery and I think she took that more than the serious side of it."

A hospital can promulgate reasonable rules relating to the conduct of its professional personnel and expect the employees to abide by such rules. Here, we are not considering a single incident or the violation of a comparatively innocuous rule, but rather a more or less continuous breach or disregard of important rules or regulations.

The findings of fact made by the Commission are amply supported by the evidence, as is the conclusion of law that claimant was guilty of misconduct which disqualifies her from receiving unemployment benefits.

Claimant argues that employer's offer of other employment or transfer of employment to another department of the hospital may constitute condonation of past misconduct and entitle claimant to unemployment benefits. We disagree. It is not unreasonable for employer to provide by rule that a higher or different standard of performance may be required in one department of the hospital as compared with other less critical areas of the hospital. Employer's acceptance of a nurse's conduct in a noncritical situation would not amount to condonation of the same conduct in the critical situation. In any event, the question is moot here since employer's offer of employment in another department of the hospital was rejected by claimant.

This record requires us to take note, as we did in a recent case of an apparent violation of I.C. § 3–103.[3] It appears here that one Steven A. Millard, Director of the Idaho Hospital Association, introduced evidence, examined and cross-examined witnesses, interposed objections and in general acted as attorney in the prosecution and defense of this contested claim. We recognize the inherent right of a natural person to represent himself *pro se,* but this right does not extend to representation of other persons or corporations. As in *White,* we are directing that the officials of the Idaho

State Bar conduct an investigation and take such action as is appropriate.

The decision of the Industrial Commission is affirmed. No costs allowed.

SHEPARD, C. J., BAKES and BISTLINE, JJ., and ROWETT, J. Pro Tem., concur.

---

3. *White v. Idaho Forest Industries,* 98 Idaho 784, 572 P.2d 887 (1977).