649 P.2d 1375

**Tonnie E. CHAVEZ, Petitioner-Appellant,**

v.

**EMPLOYMENT SECURITY COMMIS-SION and Capital Title Company, Respondents-Appellees.**

No. 13852.

Supreme Court of New Mexico.

June 29, 1982.

Rehearing Denied Aug. 20, 1982.

Herrera & Sena, Steve Herrera, Santa Fe, for petitioner-appellant.

Jeff Bingaman, Atty. Gen., J. Richard Baumgartner, Asst. Atty. Gen., Albuquerque, for Employment Security Com'n.

LaMerle Boyd, Santa Fe, for Capital Title Co.

## OPINION

FEDERICI, Justice.

This is an appeal from the District Court of Santa Fe County. Following a final administrative appeal unfavorable to her claim for unemployment benefits, T. E. Chavez (appellant) petitioned the district court for a writ of certiorari to determine whether she had been discharged from her employment for misconduct as contemplated by Section 51–1–7(B), N.M.S.A.1978 (Repl.Pamp.1981). The petition was granted and the district court held against appellant and for Capital Title Company and the Employment Security Commission (appellees). The ruling of the district court is challenged by appellant in this appeal. We reverse the district court.

The issue on appeal is whether there is substantial evidence to support the appellees that appellant was discharged from her employment for misconduct.

Appellant was discharged from her employment with Capital Title Company for alleged excessive absenteeism. Section 51–1–7(B) provides that:

An individual shall be disqualified for, and shall not be eligible to receive, benefits:

. . . .

B. if it is determined by the department that he has been discharged for misconduct connected with his work or employment.

Misconduct has been defined as follows:

... "misconduct" ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Mitchell v. Lovington Good Samaritan Center, Inc.*, 89 N.M. 575, 577, 555 P.2d 696, 698 (1976), quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941).

■ Whether excessive absenteeism, amounts to misconduct under the general rule stated above depends upon the particular facts in each case. We adopt the following statement as the rule in New Mexico:

[P]ersistent or chronic absenteeism, at least where the absences are without notice or excuse, and are continued in the face of warnings by the employer, constitutes wilful misconduct within [§ 51–1–7(B)].

Annot., 41 A.L.R.2d 1160 (1955). *See, e.g., Merkle v. Review Board of Indiana Emp. Sec. Div.*, 120 Ind.App. 108, 90 N.E.2d 524 (1950).

■ Whether the judgment of the district court, which had before it the evidence presented to the administrative hearing officer is based on substantial evidence, depends upon whether there is a residuum of legally competent evidence in the record which would support a verdict in a court of law. *Young v. Board of Pharmacy*, 81 N.M. 5, 462 P.2d 139 (1969).

The evidence in this case shows that appellant was discharged from her employment after missing 13 out of 94 working days between September 20, 1977, and February 8, 1978. The reason given for three of the absences was that appellant's father-in-law, to whom appellant was very close, became gravely ill. On one occasion appellant testified that she had to take her father to a clinic in Albuquerque. The reasons given for the other absences were that appellant had a cold or was not feeling well.

Company policy known to employees at Capital Title was that an employee was expected to be at work every day except in cases of illness or emergency, in which case, the employee was to notify the front desk that the employee would be absent.

Appellant claims that she always gave proper notice when she was going to be absent by calling someone in the office. Appellees dispute appellant's contention regarding notice. The president of Capital Title testified he was not personally notified by appellant but that he was informed by other employees that appellant did not give notice.

Appellees also claim that appellant was warned about excessive absenteeism. The president of Capital Title testified that he had instructed another employee to warn appellant, but that he had not warned her himself. Appellees also rely on the following statement made by appellant to support their claim that appellant had been warned about excessive absenteeism:

[W]here they really held it against me is when in December, when my father-in-law got very sick. He had two heart attacks and I was gone, let's see, Tuesday, Wednesday—three days. I called in each day that I wasn't going to be in

because they wanted the immediate family because we didn't know whether he was going to make it or not.

. . . .

And that night, you know, they have a Christmas party and bonuses and everything and just because I wasn't there he didn't give me mine.

Viewing the record as a whole, we conclude that there is an absence of legally competent evidence showing that appellant was guilty of misconduct. While the testimony in the record is in conflict as to whether appellant gave proper notice regarding her absences, the testimony favoring appellees is hearsay. Our assessment of appellant's own statement quoted above, said by appellees to show that she was warned, is that the statement only shows that appellant thought she was not given her Christmas bonus because she was not present at the company Christmas party. The statement quoted above is inadequate to show that appellant was actually warned about excessive absenteeism.

■ We need not reach the issue of whether appellant's excuses for missing work were sufficient. Even if some of the excuses she gave were inadequate, any discharge based on inadequate excuses for missing work must be preceded by adequate warning by the employer or his authorized representative that such behavior will not be tolerated.

We hold that there is no substantial evidence in the record to support the Commission's order and the trial court's judgment that appellant was discharged from her employment for misconduct.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.

EASLEY, C. J., and PAYNE, J., dissenting.

EASLEY, Chief Justice, respectfully dissenting.

In my opinion the majority is in error on five issues:

1. The scope of appellate review.

2. The admissibility and weight of hearsay evidence in administrative proceedings.

3. The substantiality of the evidence.

4. The duty to warn an employee under the circumstances.

5. The adequacy of the excuses for being absent.

The owner of the business, Salinas, testified that some time in 1977 management began to notice a pattern of repeated absences by Mrs. Chavez. On September 20, 1977 he asked Mr. Apodaca, the Vice President of the company, to begin logging everyone's attendance record. Salinas stated: "[A]t that time he [Mr. Apodaca] was instructed and he in fact and (Mr. Freddie Barelo) also of that office, advised Mrs. Chavez that we were not happy with her attendance record." However, she missed three more days just before Christmas, at which time Salinas told Barelo he should talk with Ms. Chavez again and advise her that the company was not going to tolerate any more repeated absences. She was further absent on February 6 and 7, 1978. Salinas claimed she did not give notice as to either date.

According to her own testimony, Ms. Chavez became aware of the fact that her employer was incensed about her absences, at least as early as Christmas, 1977. She stated that Salinas gave out Christmas bonuses to all the other employees but did not give her one because of her absences.

She was absent thirteen times in ninety-four days. She testified some of the absences were due to colds, the fact that she "did not feel good", or that she did not "feel up" to going to work. She was also absent at least three times to attend to her father and her father-in-law. She said "he" objected to her staying off the job to care for people other than immediate family. Salinas testified that on some occasions Ms. Chavez gave notice that she would be absent but that he "very closely questioned Mr. Apodaca on her final two absences" and that she did not check in on either one of those dates. Salinas questioned whether

her excuses for missing were always legitimate. She got paid for the days she was absent.

Mrs. Chavez denied that she had ever been warned that her absences might cause her to be discharged. She also claims that on each occasion when she was going to be absent she notified persons in the office.

### 1. Scope of review.

The secretary was the fact finder at the administrative level. He decided as follows:

The record reveals that the [Chavez] was repeatedly absent from work without proper notice despite the fact that she had been warned about the problem.

The scope of review of these cases at the trial court level was announced in *Wilson v. Employment Security Commission*, 74 N.M. 3, 8, 389 P.2d 855, 858 (1964), where the Court declared:

The trial court shall adopt as its own such of the [Secretary's] findings of fact as it determines to be supported by substantial evidence and shall make such conclusions of law and decision as lawfully follow therefrom. If the district court determines that legal evidence before the [Secretary] fails substantially to support such findings or decision, then the district court shall make its own conclusions of law and decision based only upon the legal evidence before the [Secretary].

In *Sandoval v. Department of Employment Security*, 96 N.M. 717, 634 P.2d 1269 (1981), this Court outlined the scope of appellate review:

The function of an appellate court is to review the evidence considered by the lower court, not to weigh it. *Duke City Lumber Company v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975). If there is substantial evidence to support the findings of the trial court, they shall not be disturbed. *Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977).

The district court adopted the above finding of the secretary. Its decision in these cases is entitled to all the presumptions on appeal that pertain in all other cases. Every reasonable intendment and presumption will be resolved against appellants in favor of proceedings in the trial court. *See Romero v. Sanchez*, 86 N.M. 55, 519 P.2d 291 (1974).

In our case both the Secretary and the district judge evaluated the evidence and found that Ms. Chavez was discharged for good cause. However, the majority on our Court did not adhere to the usual presumptions and the substantial evidence standard. Instead the majority reevaluated and weighed the evidence, concluding that the trial court's decision was not based upon substantial evidence.

Salinas claims that Ms. Chavez had knowledge as early as Christmas that he was dissatisfied with her absences. He calls attention to the fact that she testified that "where they really had it against me is when in December, when my father-in-law got very sick." She missed three days and testified that she missed a Christmas party. "And that night, you know, they had a Christmas party and bonuses and everything and just because I wasn't there he didn't give me mine."

An example of the weighing of evidence by the majority is that it is said in the opinion "our assessment of appellant's own statement quoted above, said by appellees to show that she was warned, is that the statement only shows that appellant thought she was not given her Christmas bonus because she was not present at the company Christmas party." If there was room for interpretation of that evidence the view of the fact-finder should prevail. Both the Secretary and the trial court obviously took the opposite view to that expressed in the majority opinion.

### 2. Weight of hearsay testimony.

The trial court agreed with the findings of the Secretary and held: "The evidence supports the finding that the claimant was repeatedly absent from work without proper notice and had been given warning concerning such absences."

The majority finds that although there is a conflict as to whether Ms. Chavez was warned regarding the disenchantment with the number of her absences, the testimony favoring the employer was hearsay. They reason further that since Ms. Chavez' statement about the Christmas party and the failure to give her a bonus had no bearing on the issue of her being warned about the three days' absence just prior to Christmas, there was insufficient evidence to show that she had been warned prior to her two absences in February. This raises the issue as to whether hearsay alone is to be considered sufficient to sustain a decision.

In *Sandoval, supra,* we cited *Trujillo v. Employment Security Division,* 94 N.M. 343, 610 P.2d 747 (1980), and stated as follows:

When a substantial right, such as one's ability to earn a livelihood, is at stake, a reviewing court must set aside an administrative finding unless the finding is supported by evidence which would be admissible in a jury trial and which would support a verdict in a court of law.

In *Trujillo, supra,* we held that unemployment compensation is such a substantial right that the benefits may not be denied on the basis of controverted hearsay testimony alone.

In *Trujillo* this Court relied principally on *Young v. Board of Pharmacy,* 81 N.M. 5, 462 P.2d 139 (1969), in which the license of a pharmacist was in question. This Court held that where a person's livelihood is at stake, any action depriving him of that property right must be based upon such substantial evidence as would support a verdict in a court of law. Thus, we adhered to the "legal residuum" rule which holds that absent the presence of at least a residuum of evidence which is competent under the exclusionary rules, a decision cannot be predicated on hearsay evidence.

However, this Court in *Young* made a point of the fact that the professional was being deprived of a "property right", stating that the conclusion conformed with the rules stated by Davis in his administrative law treatise, § 14.10 as follows:

It appears to be well established that, in proceedings to revoke a license to conduct a business or profession, where, by law, the licensee is entitled to a hearing before the licensing authority, revocation based solely upon hearsay evidence is unwarranted.

*Young, supra* at 9, 462 P.2d at 143.

In 3 Davis, Administrative Law 16:6 (2d ed. 1980), Davis said: "The [legal] residuum rule was once largely the law, but it is now largely abolished." He further states:

The [legal] residuum rule requires a reviewing court to set aside an administrative finding unless the finding is supported by evidence which would be admissible in a jury trial.... Under the residium rule a finding which is unsupported by evidence which would be admissible in a jury trial must be set aside, no matter how reliable the evidence may appear to the agency and to the reviewing court, no matter what may be the evidence or lack of evidence on the other side, no matter what may be the consequences of refusing to rely upon the evidence.

Rejection of the [legal] residuum rule does not mean that an agency is compelled to rely on incompetent evidence; it means only that the agency and the reviewing court are free to rely upon the evidence if in the circumstances they believe that the evidence should be relied upon. Rejection of the [legal] residuum rule does not mean that a reviewing court must refuse to set aside a finding based upon incompetent evidence; it means only that the court may set aside the finding or refuse to do so as it sees fit, in accordance with its own determination of the question whether the evidence supporting the finding should be deemed reliable and substantial in the circumstances.

In *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the United States Supreme Court rejected the legal residuum rule.

In Stein and Bruff, Administrative Law § 26.01 (1981) (footnote omitted), the au-

thors point out: "[T]he general rule prevails that hearsay evidence is admissible in administrative proceedings, even to the extent that it may be reversible error for an agency to refuse to admit hearsay evidence."

"In determining whether the hearsay is substantial evidence, the courts have looked to the truthfulness, reasonableness and credibility of the evidence." Mezines, *supra*, at § 26.02. *See McKee v. United States*, 500 F.2d 525 (Ct.Cl.1974).

In our case the hearsay evidence was not objected to and no motion was made to strike it. It was subject to consideration. *Shoup v. Review Bd. of Ind. Employment Sec.*, 399 N.E.2d 771 (Ind.Ct.App.1980) (hearing officer may consider unobjected hearsay).

This record shows direct testimony and circumstantial evidence from which inferences can be clearly drawn that Ms. Chavez did not give proper notice to her employer as to her absences. However, the evidence of her having been warned as to what the consequences would be of continued absences was supported only by the hearsay testimony of the employer plus the circumstances surrounding the Christmas proceedings as detailed by Ms. Chavez.

Salinas' testimony as to his active interest in this matter and his instructions and conferences with his supervisors, resulting in his statements that Ms. Chavez did not give any notice of the absences on the two days in February, is the type of hearsay evidence that would normally be accepted in any type of administrative hearing as being reliable. It is only the arbitrary residuum rule that would preclude its use.

In our case the majority opinion equates the loss of a professional license, a "property right," as in *Young*, with Ms. Chavez' loss of a few hundred dollars in unemployment compensation at most. She is not losing a means of livelihood. Indeed, there is no question but that the employer had the right to discharge her. Nothing about this situation interferes with her continued ability to seek and obtain gainful employment. Thus, it is simply a cause of action for money.

Most administrative law cases involve recovery of money. The decision by this Court to limit the use of hearsay evidence under the circumstances in our case would logically apply in all administrative law cases wherein the issue involved is only money. This has wide implications.

The decision of the majority unreasonably extends the theory in *Young*, as did our decision in *Trujillo*. My recommendation is that we reverse *Trujillo* in this case or the earliest subsequent case that comes before us so as to avoid a blanket application of the legal residuum rule to a broad class of litigation.

Thus we have departed some distance from the position of most courts as regards hearsay evidence in administrative adjudications. Even under this liberal interpretation in favor of a claimant, hearsay testimony is not to be ruled out automatically, if there is direct or circumstantial evidence, or inferences therefrom, that support the hearsay testimony, which I think applies in this case.

3. *Substantiality of the Evidence.*

On appeal we must view the evidence in the light most favorable to the successful party and disregard all contrary evidence and inferences. *Varney v. Taylor*, 77 N.M. 28, 419 P.2d 234 (1966). Although it is clear that it could be inferred from Ms. Chavez' testimony that she knew that she was in trouble because of her absences at Christmas time, and that the Secretary and the trial judge undoubtedly so inferred, the majority opted for an inference that was not favorable to the decision below. The record shows that the evidence was otherwise sufficient to sustain the decision.

4. *Duty to Warn.*

The majority seems to be saying that before discharge a warning must always be given to the employee that excess absences will not be tolerated. If this is the intent of the opinion, I dissent from that principle. It is ludicrous to think that Mrs. Chavez

who had been absent thirteen days is three months, for which she was paid by her employer, was not fully aware that she was not fulfilling her employment contract. Suppose she had stayed off for a month or two before being warned; under the proposed theory, she would be entitled to say that she was wrongfully discharged.

An employee is hired to perform services. It is inherent in the relationship that the employee show up on the job. Making it mandatory that an employer warn an employee that obvious misconduct may result in discharge unreasonably extends the legal principle in this case.

### 5. *Adequacy of Excuses*

The majority did not reach this issue because of disposing of the case on other grounds. However, I would hold that the excuses for absences advanced by Ms. Chavez were not shown to be sufficient to justify her being away from her job. There is no substantial evidence to show that many of the excuses justified her absence.

I would affirm the trial court.

PAYNE, J., concurs in the dissent.