Neil TROTTA, Plaintiff and Appellant,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Defendant and Respondent.

No. 18237.

Supreme Court of Utah.

May 19, 1983.

John L. Black, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Floyd G. Astin, K. Allan Zabel, Salt Lake City, for defendant and respondent.

STEWART, Justice:

Neil Trotta, the claimant in the proceedings below, appeals from a denial of unemployment benefits. The Industrial Commission Board of Review, Department of Employment Security, reversed the appeals referee on a two to one vote, ruling that Trotta's unexcused absence from work jus-

tified denial of unemployment benefits under U.C.A., 1953, § 35–4–5(b)(1) (1981 Supp.). We vacate that decision and remand for reconsideration in light of this opinion.

On August 12, 1981, Trotta was hired by the Fisher Company as a fiberglass laminator. During a previous employment with Fisher, his record and relationship with the company had been good. When he was rehired, Fisher had a backlog and requested its employees to work as many hours as they could, including overtime when possible, and to make up missed days. However, when deer hunting season came, the company allowed its employees time off, but asked them to make up in advance the day off permitted for the opening day of the season.

From August 12 to October 15, 1981, Trotta's job performance was satisfactory. On Friday, October 16, the opening day of hunting season, he took the day off with the rest of the employees. On October 19 and 20, the following Monday and Tuesday, he failed to report for work. His wife called in Tuesday to say that he would not be in; she did not say why.

The next day when Trotta returned to work his foreman asked about his absence. Trotta replied that he had been ill. The company, however, had been told by another employee that Trotta had gone deer hunting on October 20; but the company neither said anything about the discrepancy to Trotta, nor warned him that future absences might lead to discharge.

He again missed work on October 27 and 28, a Tuesday and Wednesday. Again, his wife called the company to report, without giving a reason, that he would be absent. When he returned to work on Thursday, he was fired.

After his discharge, Trotta applied for and was awarded unemployment compensation. Fisher appealed the award. At the hearing before the appeals referee, Fisher's secretary testified that on October 20, one of the days Trotta said he was ill, an employee named Jack Gardner had called in and asked permission to go hunting that day with Trotta. To support this hearsay statement, the secretary produced Gardner's sworn written statement that he had gone hunting with Trotta on November 20. The discrepancy in the date was apparently a clerical error, and the Board treated the document as having been intended to read "October 20." In response, Trotta denied going hunting on October 20, but admitted going hunting on October 27.

The appeals referee sustained the award. At the hearing Trotta testified that he was sick all four days of his absence from work. The appeals referee ruled that Trotta's conduct was not sufficiently detrimental to the employer's interest to warrant a disqualification from benefits under § 35–4–5(b)(1), the governing statutory provision. That provision states that an employee is disqualified from receiving unemployment benefits if

> the claimant was discharged for an act or omission in connection with employment . . . which is *deliberate, willful, or wanton and adverse to the employer's rightful interest.* [Emphasis added.]

Fisher appealed the adverse ruling to the Board of Review. In a two-to-one decision, the Board appears to have relied exclusively on Trotta's admission that he had gone hunting October 27 as evidence of "deliberate, willful, or wanton" conduct and reversed the appeals referee. The Board's opinion, however, also refers to October 20th and the factual controversy as to whether he had gone hunting that day. Conceivably the Board's opinion might also be read to have relied on the absences of both the 20th and the 27th, although there is some doubt about that interpretation. In any event, the majority of the Board reasoned that Trotta deliberately took time off with the knowledge that Fisher had a backlog of work to get out and desired its employees to be at work on a full-time basis if possible.

■ The Board ignored the other two absences apparently because it appeared they were due to illness and therefore were not deliberate, willful, or wanton. A denial

of benefits could not, therefore, have been based on those absences.[1]

■ Under § 35–4–10(i), this Court must sustain the factual findings of the Board of Review if supported by substantial evidence. *Salt Lake City Corp. v. Department of Employment Security,* Utah, 657 P.2d 1312, 1315 (1982); *West Jordan v. Department of Employment Security,* Utah, 656 P.2d 411, 413 (1982). *See also Continental Oil Co. v. Board of Review,* Utah, 568 P.2d 727, 729 (1977).

■ Our review of the legal standards applied by the Board is, however, considerably broader. We do not defer to the Board's application of the legal standards unless the statutory language construed evinces a legislative intention to commit broad discretion to the administrative agency, or the agency, because of its expertise in a given area, is in a better position than the reviewing court to give content and meaning to the statutory terms. *Salt Lake City Corp. v. Department of Employment Security, supra,* at 1316.

■ Claimant challenges both the Board's findings of fact and the legal standards it applied. As to the findings, claimant contends that the Board erred in relying on claimant's admission at the hearing that he had gone hunting October 27. The contention is correct. Section 35–4–5(b)(1) precludes benefits only if the deliberate, willful or wanton act alleged is also the act for which "the claimant was discharged." In this case, claimant's hunting on October 27 was not known to the employer at the time of his discharge. Fisher did not learn of that until claimant admitted it at the hearing, and therefore, claimant's absence for deer hunting on the 27th could not have been the cause for his discharge. Under § 35–4–5(b)(1), it was error for the Board of Review to rely on that fact. *Continental Oil Co. v. Board of Review, supra,* at 729.

Although the Board did not so find, the out-of-court oral and written statements of Jack Gardner, claimant's fellow employee, might have provided some basis for the discharge because they show that claimant went hunting at least one of the days he claimed he was sick. Claimant contends, however, that the admission of Gardner's hearsay statements was error.

■ The Industrial Commission is empowered by statute to prescribe regulations governing the admissibility of evidence at unemployment compensation hearings. U.C.A., 1953, § 35–4–10(e) states in relevant part:

> [T]he conduct of hearings and appeals shall be in accordance with regulations prescribed by the Commission for determining the rights of the parties whether or not such regulations conform to commonlaw or statutory rules of evidence
> . . . .

Thus, the Commission is not bound to follow traditional rules of evidence in nonjudicial trials. The Commission regulation governing the admissibility of evidence is Regulation A71–07–1:4b(1), which states:

> Hearing of Appeal. . . . All hearings shall . . . be conducted informally and in such manner as to ascertain and protect the rights of the parties. . . . Oral or written evidence of any nature whether or not conforming to the legal rules of evidence may be accepted and given its proper weight.

■ Read together these provisions authorize departure from strict adherence to the hearsay rule. All that is necessary is that the evidence adduced have some probative weight and reliability. A similar rule applies in various other administrative hearings. For example, under U.C.A., 1953, § 35–1–88, formal rules of evidence need not be adhered to in workmen's compensation hearings. *Schmidt v. Industrial Commission,* Utah, 617 P.2d 693 (1980). Nevertheless, there must be some reasonable basis for inferring the reliability of hearsay evidence. Gossip or rumor will not suffice as

---

1. Generally, where there is compliance with the employer's rules regarding absences due to illness, discharge because of absence for health reasons does not justify withholding benefits for misconduct. *Scevers v. Employment Division,* 26 Or.App. 659, 554 P.2d 575, 577 (1976).

admissible evidence. *Cf. Ring v. Smith,* 5 Cal.App.3d 197, 85 Cal.Rptr. 227 (1970).

■ In the instant case, Gardner's out-of-court evidence was reduced to writing and was given under oath. Gardner was in a position to know the facts of which he spoke. His evidence was not second-hand gossip. It is reasonable to conclude that his statement was reliable. Accordingly, there was no error in admitting that evidence.

■ Gardner's statements, however, establish only that claimant went hunting on October 20. Yet Fisher allowed claimant to return to work on October 21, and did not discharge him until after the absences of October 27 and 28. Fisher may have acquiesced in claimant's October 20 absence. If the dismissal were predicated in part on claimant's absence that day, this is a matter which should be considered by the Board on remand.

Claimant also contends that his absences were not sufficiently culpable to be "deliberate, willful, or wanton and adverse to the employer's rightful interest" within the scope of § 35–4–5(b)(1), and that the Board misapplied the law in so ruling.

We recently had occasion to interpret this language in *Clearfield City v. Department of Employment Security,* Utah, 663 P.2d 440 (1983). There we held that the discharge of a police officer for an off-duty act of sodomy justified denial of unemployment benefits. We stated that for conduct to be considered "deliberate, willful, or wanton," the employee need not intend to cause harm to his employer. It is sufficient that his acts be volitional, the consequences of his acts be foreseeable, and that the acts be sufficiently culpable to justify preclusion of benefits. We distinguished those acts from "mere inefficiency or failure of performance as a result of inability, inadvertence, ordinary negligence, or good faith error." *Id.* at 444, n. 3. In the present

case, claimant's absence to go hunting was volitional.[2] The issue then is whether one absence was "deliberate, willful, or wanton," and so "adverse to the employer's rightful interest" as to justify a preclusion of benefits.

Most states have statutes similar to § 35–4–5(b)(1) that deny unemployment benefits for work-related "misconduct." Usually that term is not defined in the statute but is construed according to standards worded similarly to those stated in § 35–4–5(b)(1). A number of cases have decided whether acts of absenteeism constitute misconduct under such statutes. In *Industrial Laundry v. Review Board,* 147 Ind.App. 40, 42, 258 N.E.2d 160, 162 (1970), the court held that for absenteeism to constitute misconduct within the scope of § 15.01 of the Employment Security Act, Burns Ind.Stat.Ann. § 52–1539,[3] "an act must show a wanton or wilful disregard for the employer's interests, a deliberate violation of the employer's rules, or a wrongful intent." (Quoting prior Indiana cases.) *See also Weston v. Gritman Memorial Hospital,* 99 Idaho 717, 719, 587 P.2d 1252, 1254 (1978); *Chavez v. Employment Security Commission,* 98 N.M. 462, 649 P.2d 1375, 1376 (1982); 76 Am.Jur.2d Unemployment Compensation § 52 (1975); Annot., *Discharge for Absenteeism or Tardiness as Affecting Right to Unemployment Compensation,* 58 A.L.R.3d 674, §§ 6–10 and 13 (1974).

In determining whether absenteeism is "misconduct" under the standards just mentioned, the above authorities have considered a number of interrelated factors. These include: (1) number of absences, (2) failure to give notice of absence, (3) breach of company rules, (4) giving of a warning by the employer to improve attendance, and (5) absence against orders or in the face of a warning. In the present case, only factors (1), (4), and (5) are relevant, since Fisher does not contend that claimant failed to

---

**2.** Trotta makes the frivolous contention that he really was sick the day he went hunting and therefore unable to go to work. The Board properly dismissed this contention.

**3.** The section reads in relevant part: "An individual shall be ineligible for . . . benefit rights: For the week in which he . . . has been discharged for misconduct in connection with his work, and for all weeks subsequent thereto . . . ."

properly notify it of his absences, or that his absences were a breach of company policy.

In regard to the first factor, cases usually fall into two categories: frequent absences and single absences. *See* Annot., 58 A.L. R.3d 674, §§ 6, 7 (1974). Generally, in frequent absenteeism cases, benefits are not precluded for unexcused absences unless the employee was warned that continued absences would lead to discharge. For example, in *Chavez v. Employment Security Commission, supra,* the employee had missed 13 working days out of 94 to care for her father-in-law, who was gravely ill. Reversing a denial of benefits by the Commission, the New Mexico Supreme Court stated that "any discharge based on inadequate excuses for missing work must be preceded by adequate warning by the employer ... that such behavior will not be tolerated." 649 P.2d at 1377. And in *Januzik v. Department of Employment Security,* Utah, 569 P.2d 1112 (1977), which was decided under a misconduct standard essentially the same as the current statutory standard, this Court sustained a denial of benefits for frequent absences on the grounds that

> [h]aving been cautioned ... with respect to [his absences], the claimant knew that failure to report for work ... would result in his discharge, and it is considered that claimant's [subsequent failure to report to work] demonstrated a disregard for the best interest of the employer [so] as to constitute misconduct connected with his work.

*Id.* at 1114. *See also Weaver v. Employment Security Commission,* Del.Super., 274 A.2d 446, 447 (1971); *Industrial Laundry v. Review Board, supra,* 147 Ind.App. at 43, 258 N.E.2d at 163; Annot., 58 A.L.R.3d 674, § 13[a], [c] (1974).

■ A warning is generally required in single absence cases, where an employee usually has no reason to expect that one unexcused absence will lead to his discharge. In such cases, benefits are not usually precluded unless the absence was taken in direct disregard of an employer's refusal to allow time off. In *Butchko v.*

*Unemployment Compensation Board of Review,* 168 Pa.Super. 618, 82 A.2d 282 (1951), a denial of benefits was upheld, where the absence was taken in the face of repeated refusals for time off at Easter. *See also Johns v. S.H. Kress & Co.,* 78 Idaho 544, 307 P.2d 217 (1957); *Morgan v. Unemployment Compensation Board of Review,* 176 Pa.Super. 297, 106 A.2d 618 (1954); *Krawczyk v. Unemployment Compensation Board of Review,* 175 Pa.Super. 361, 104 A.2d 338 (1954). No warning, however, need be given when the employee knows, without being warned, that the absence will seriously interrupt the employer's operations. *See Watts v. Employment Security Agency,* 80 Idaho 529, 335 P.2d 533 (1959) where the absence of logging scaler resulted in shutdown of forty-man logging operation.

■ The Board did not consider how the absence of a warning bears upon the issue of whether claimant's action was so culpable as to be deliberate, willful or wanton. Furthermore, because it is possible that the Board's decision was based on absences on both the 20th and the 27th, the case must be remanded. If, however, the decision were based on the absence of the 27th, the decision was clearly in error, irrespective of a warning. If it were based on the 20th, the Commission must consider whether, without a warning against absences, Trotta's absence was so adverse to the employer's interest as to meet the statutory standard and whether the claimant's conduct met the culpability standard set out in *Clearfield City.*

Because it is not clear what the basis of the Board's opinion is, and because the Board failed to take into account whether the company had warned against future absences, the case should be remanded to the Board for further consideration in light of the above legal principles.

Reversed and remanded for reconsideration.

OAKS and DURHAM, JJ., concur.

HOWE, Justice (concurring and dissenting):

I concur in the reversal. However, I take exception to the statements in the majority opinion that (1) "... claimant's hunting on October 27 was not known to the employer at the time of his discharge. Fisher did not learn of that until claimant admitted it at the hearing, and therefore, claimant's absence for deer hunting on the 27th could not have been the cause for his discharge. Under § 35–4–5(b)(1), it was error for the Board of Review to rely on that fact," and (2) "If the decision [of the Board] were based on the absence of the 27th, the decision was clearly in error." These statements overlook the fact that while Fisher probably was not certain that Trotta had gone hunting on October 27 until Trotta later admitted it, Fisher certainly had good reason to believe he had gone hunting that day in view of his absence for hunting the previous week. This belief was confirmed later by Trotta's admission.

The evidence which Fisher could rely upon when it discharged Trotta is the following: Trotta was absent on Monday and Tuesday, October 19 and 20, following the opening of deer season. He did not call in either day. His wife called in on Tuesday, but did not give any reason for his absence. Jack Gardner swore under oath that he went hunting with Trotta on Tuesday. Gardner informed Fisher of that fact on that same day. When Trotta returned to work on Wednesday he told his foreman that he had been ill. Now just one week later, apparently while deer hunting season was still on, he was again off work on Tuesday and Wednesday, October 26 and 27. He did not call. His wife called in, but gave no reason for his absence. It would have been reasonable for Fisher to deduce that he had probably gone hunting again and would be justified in firing him. Fisher's good reasoning was later confirmed. Certainly an employer need not wait until an employee makes an admission of an act before it can be considered grounds for dismissal.

With that observation, I concur in remanding this case to the Board, but I would have the Board also consider whether his absence on October 27 arose to the level of a "willful, deliberate or wanton" act required by § 35–4–5(b)(1) in light of the fact that Fisher had given no warning to Trotta concerning his absence of October 20 although Fisher knew he had gone hunting with Gardner. I would not confine the consideration of the Board to only the October 20 absence as does the majority opinion.

HALL, C.J., concurs in the concurring and dissenting opinion of HOWE, J.