PATTERSON, Justice:
This is an appeal by the Mississippi Public Service Commission from a judgment of the Circuit Court of the First Judicial District of Hinds County. There the circuit court reversed on appeal to it the decision of the Mississippi Public Service Commission which directed the Alabama Great Southern Railroad Company (Southern Railway System) to install and maintain approved safety gates at the Rogersla-cy railroad crossing in Jones County.
The suit arises under Mississippi Code 1942 Annotated section 7857 (1956), enacted in 1892, but under which no cases have been decided. It is as follows:
It is the duty of a railroad whose track crosses a thoroughfare, whenever the commission shall declare the safety of the public to require it, and shall so order, to maintain a gate at the crossing thereof, and to close it during the passage of its engines and cars, and only for a sufficient length of time for that purpose. The commission may prescribe the materials, dimensions, and mode of operation of such gates.
The commission, after a hearing, directed that the safety of the public required installation and maintenance of gates by the Southern Railway System at the Rogerslacy crossing. This order was reversed by the circuit court.
The primary assignment of error on appeal to this Court is that the lower court erred in its construction of Section 7857 and in substituting its finding for those of the commission.
The Rogerslacy crossing is located on the Southern Railroad which runs parallel to U. S. Highway 11 in a north-south direction in the area of the crossing. The *666 crossing is situated approximately 300 feet west of the Highway. A blacktopped road extends from the Highway westward across the tracks, terminating at the South-land Oil Company refinery which is located on the northwest quadrant of the crossing. A gravel road curves from the blacktopped road near the refinery and extends southwest for about a mile where it intersects another paved north-south highway. Though a public road, the traffic traversing the crossing is composed largely of oil transportation trucks which carry petroleum products from the refinery.
When the crossing is approached from the east, visibility is relatively unimpaired. The track is level and one can see to the north for approximately 2000 feet or until the track curves, and south for approximately 2400 feet or the distance the average eye can distinguish an object.
In the past obscured visibility to the north has at times existed for a motorist approaching from the west, the obstruction being railroad cars spotted on a spur track west of the main line. The restricted visibility caused a particularly hazardous condition for heavily laden trucks leaving the refinery and traveling in an easterly direction since it was necessary to almost pull the trucks upon the crossing in order to gain a view to the north. The speed of a truck after its stop at the crossing was necessarily slow which, combined with the great speed of approaching trains, created an unusual hazard for the trucks and to a lesser degree for lighter vehicles. The record reflects that speeds as great as 70 to 80 miles per hour were maintained by the passing trains which led to several near accidents.
Prior to the hearing the railroad enacted several protective measures to improve the safety of the crossing. These were: A rule was enacted by the railroad which prohibited the placing of railroad cars on the spur track which obstructed the northward vision of a motorist traveling in an easterly direction except when a locomotive was actually switching cars and at that time provision was made for an employee of the company to act as a flagman for traffic at the crossing. It also adopted a rule reducing the speed of passing locomotives to 45 miles per hour for southbound trains and to 50 miles per hour for northbound trains. In furtherance of these safety measures the foliage along the tracks in the vicinity of the crossing has been reduced to improve visibility and the railroad has moved the whistle post, required by statute, from 900 feet north of the crossing to 2200 feet in order to afford motorists an earlier warning of approaching trains.
There was no testimony before the commission to indicate that the protective measures initiated by the railroad were not successful in reducing the hazards present at the crossing. All witnesses testified that if these adjustments were properly observed, no unusual hazard would exist. From the record it appears that all of ■these safety provisions have been rigidly enforced. The appellee contends that these protectives measures alleviated the hazardous condition at the crossing and rendered it no more dangerous than any other rural crossing and that safety gates are not needed under the present conditions.
We, of course, recognize there is an inherent danger at all railroad crossings. The question before the Court is whether there was evidence before the commission from which it could find that the safety of the public required the company to install and maintain a gate at the crossing. We glean from the record that the precautionary measures were enacted and were being maintained at the time of the hearing and prior to the entry of the commission’s order.
This Court has expressed itself many times concerning the power or propriety of a court to reverse an administrative body vested with police power. In Tri-State Transit Co. of Louisiana v. Dixie Grey *667 hound Lines, 197 Miss. 37, 47-48, 19 So.2d 441, 443 (1944), we stated:
The findings of fact of the Public Service Commission are prima facie correct, “the reviewing court can not substitute its judgment for that of the Commission and disturb its finding where there is any substantial basis in evidence for such finding or where the ruling of the commission is not capricious or arbitrary.”
To the same effect see Keith v. Palmer, 235 So.2d 454 (Miss.1970); Illinois Cent. RR Co. v. Jackson Ready-Mix Concrete, 243 Miss. 72, 137 So.2d 542 (1962); Cobb Bros. Constr. Co. v. Gulf, M. & O. R. Co., 213 Miss. 706, 57 So.2d 570 (1952); and Tri-State Transit Co. of La. v. Mobile & Ohio Transportation Co., 191 Miss. 364, 2 So.2d 845 (1941).
We are unable to find any evidence presented to justify the commission’s decision that the public safety requires safety gates at this crossing under the provisions of Mississippi- Code 1942 Annotated section 7857 (1956). The commission either ignored or overlooked the uncontradicted corrective measures initiated and maintained by the railroad and apparently based its decision solely upon the conditions existing prior to these adjustments. Its decision was not responsive to the evidence and since it was not, it is arbitrary and unsupported in fact. Under these circumstances it is our opinion that the lower court correctly reversed the order of the Public Service Commission.
The commission has continuing jurisdiction over matters of public safety and should periodically review the condition at Rogerslacy crossing to determine whether the safety measures are maintained. If it concludes that the corrective measures are not being adequately preserved and the crossing has again become unusually hazardous, it has adequate power to alleviate the condition. There is not presently before us, however, sufficient evidence to support the order of the Mississippi Public Service Commission. The judgment of the circuit court is therefore affirmed.
Affirmed.
RODGERS, P. J., and INZER, SMITH, and ROBERTSON, JJ., concur.