262 So.2d 188 (1972)
John Fellx MILLER
v.
STATE BOARD OF PHARMACY.
No. 46574.
Supreme Court of Mississippi.
May 8, 1972.
H.A. Courtney, Jackson, for appellant.
A.F. Summer, Atty. Gen., by R. Hugo Newcomb, Sr., Asst. Atty. Gen., Jackson, for appellee.
*189 SMITH, Justice:
This case involves the appeal of John Felix Miller, a pharmacist, from a decree of the Chancery Court of the First Judicial District of Hinds County which affirmed an order of the Mississippi State Board of Pharmacy, revoking his license.
The charge preferred against Miller by the Board was stated in this language:
... The reason for this hearing is to consider the revocation of your license on the grounds that you appear to have violated Code Section 6831-05 in that you did not keep adequate records, particularly on or about February 26, 1970; and, also, that you appear to be in violation of Section 6831-02, in failing to keep adequate records.
Prior to the hearing, Miller's counsel filed several motions, among which was a motion for a bill of particulars. This motion demanded that the charge be made more definite and certain, asked for a specification of the circumstances, occasions and dates involved in the charge, and to be informed as to what manner his records were considered to have been kept "inadequately." It was stated in this sworn motion that it was impossible for Miller to prepare an answer or otherwise respond to the charge in the form in which it was made or to make necessary inquiries without being specifically advised as to "the exact, or at least the approximate circumstances, occasions, times, places, persons, amounts, etc.," involved, and that Miller would be embarrassed and prejudiced in making his defense unless supplied with this information.
All of Miller's motions, including the motion for a bill of particulars, were overruled or denied by the Board and an evidentiary hearing on the charge, as made, followed. At this hearing, the testimony of a Federal Special Agent for the Bureau of Narcotics and Dangerous Drugs was offered in support of the charge. His testimony, over repeated objections, all of which were overruled, covered a wide range. As well as can be determined from the record the gravamen of this evidence (insofar as it related in any way to the charge), was that Miller had refilled prescriptions for "controlled substances" and had not made written record of the authorization of the prescribing physician for the refills. The witness also testified, over objection, as to certain discrepancies between inventories of controlled substances in several categories and the amounts of such substances found on hand.
In response to this testimony (none of the items of which had been suggested by the charge), Miller testified that in every case he had obtained permission of the prescribing physician, often by telephone, before refilling a prescription, although a record of the telephone authorization had not always been made.
The revocation of a professional license is a matter of the most serious consequences. Proceedings directed toward that end have not been regarded in Mississippi as criminal in character. Nevertheless, the professional man accused of derelictions of such gravity as to justify revocation of his license to practice his profession, is entitled, as a matter of right, to be informed of the nature of the charge against him, if not with the exact specificity required in a criminal indictment, the charge must be made with not less exactitude and fullness than would be necessary in a bill of complaint or declaration in a civil case. Moreover, he is entitled to demand and obtain a bill of particulars or require that the charge be made more definite and certain under circumstances prescribed in the statutes, practice and procedure of this State.
At page 172, 41 Am.Jur., Physicians and Surgeons, section 44 (1942), it is stated:
Generally.  The license to practice medicine is a valuable property right, and a statute authorizing revocation of a license to practice medicine must be *190 strictly followed. Such statutes are highly penal and must be construed in the physician's favor.
The exact question presented on this appeal does not appear to have been dealt with by this Court on any former occasion. Mississippi Code 1942 Annotated section 8862.5, subsection 2 (Supp. 1971), among other things requires that a pharmacist proceeded against is entitled to "at least twenty (20) days' notice in writing specifying offense or offenses of which the licensee is charged." (Emphasis added).
In this case, no statute, or rule or regulation of the Board duly adopted under its rule making powers, has been cited to us as having established any standards for the keeping of records by pharmacists. In order to be certain that none existed, we have conducted our own research and also have addressed inquiries to the parties to these proceedings as to whether any such statute or rule or regulation existed. None has been pointed out to us. Apparently, therefore, there are no standards by which it is possible to determine whether records are kept "adequately" or not. Nor is this changed by the general requirement in the statute for the keeping of records. Even if enforceable standards for record keeping had been lawfully established, Miller would have been entitled to know from the charge itself not only exactly what records he had failed to keep "adequately," but also in what respects they were "inadequate." A reading of the transcript makes if abundantly clear that it was impossible for Miller to prepare a defense to the vague and general charge made against him that he had kept "inadequate" records. It will be observed that Miller was not charged with failure to keep any particular record, nor even with failure to keep records generally. The only charge was that his records had been, in some unspecified respect, kept "inadequately." What is "adequate" in the judgment of one man may be inadequate in the judgment of another. Intelligible and definite standards must be adopted and promulgated in order that pharmacists may be advised as to what is required of them with respect to record keeping.
The Supreme Court of New Mexico dealt with a somewhat similar question in Young v. Board of Pharmacy, 81 N.M. 5, 462 P.2d 139 (1969). In that case the New Mexico Board of Pharmacy proceeded against Young, a pharmacist, for revocation of his license to practice pharmacy on a charge that:
"[W]ilfully and unlawfully sold without a prescription certain dangerous drugs * * * and further that he conducted himself in an unprofessional manner in not keeping accurate records and inventory of depressant and stimulant drugs as required by law." (Emphasis added). (81 N.M. at 6, 462 P.2d at 140).
After a hearing at which Young was present and represented by counsel, the Board made findings of fact, including this finding:
6. The respondent has conducted himself in an unprofessional manner by not keeping adequate records and inventory of depressant and stimulant drugs as provided by law. (81 N.M. at 6, 462 P.2d at 140).
Based upon this and other findings, an order was entered revoking Young's license to practice pharmacy. From that order Young appealed to the appropriate District Court. The District Court, after reviewing the proceedings, set aside the order of the Board upon the ground (among others) that the Board's actions had been unreasonable, arbitrary and unlawful. From the judgment of the District Court the Board of Pharmacy appealed to the New Mexico Supreme Court. That Court, in dealing with the Pharmacy Board's finding of fact Number 6, supra, said:
How should appellee's conduct be characterized? Clearly, he had insufficient and faulty records and had been *191 warned concerning them. However, 21 U.S.C.A. § 360a(d) (1), being the section of the Food and Drug Laws relied on by appellant, does not require any "separate records, nor set form or forms." That section states specifically that nothing is "required as long as records containing the required information are available." It provides that a complete and accurate record of the kind and quantity of each depressant or stimulant drug "received, sold, delivered, or otherwise disposed of, the name and address of the" source from which purchased, and of the person to whom disposed of, and the date of the disposition, shall be kept for a period of three years.
[7] The proof here disclosed that an inspector for appellant asked and received appellee's records, such as they were, including an inventory, invoices for drugs received, and prescription files. The inspector inventoried a total of some 96 depressant and stimulant drugs in appellee's possession and noted considerable in the way of shortages in certain of them. However, it also appears in the records that as to certain drugs, more had been disposed of than had been acquired. What this establishes is a failure to keep accurate records. Does it prove "unprofessional conduct" as that term is described in the quotation from State Board of Dental Examiners v. Savelle, supra? We are constrained to conclude that it does not. To our minds, the keeping of records both as to income and disbursements, as well as of purchases and sales of products, are absolute requirements in any business. It is a necessity under the law in most businesses. Although a particular reason is present where drugs are involved, as here, we fail to see why accurate record-keeping should be a test of a man's professional character. This is particularly true when there is no showing that shortcomings did not result from some improper or unlawful reason or purpose, as distinguished from negligence. We do not see in the action of appellee, proven before appellant, conduct which by general opinion can be classed as so grossly unprofessional because immoral or dishonorable as to support a denomination of "unprofessional conduct." It follows that the trial court did not err in holding finding of fact No. 6 to be arbitrary and unlawful, and the appellant's conclusions to be unsupported. (81 N.M. at 10, 462 P.2d at 144).
In Mississippi Milk Commission v. Fant et al., Miss., 260 So.2d 450, decided by this Court on April 3, 1972, the Court dealt with an order of the Mississippi Milk Commission revoking certain business licenses or, in the alternative, imposing on the license holders certain money penalties. The charge upon which the Board acted was that the licensees had granted "unreasonable extension of credit" as proscribed by Section 4560-156, Mississippi Code 1942 Annotated (Supp. 1971). From the Commission's order, the licensees appealed to the chancery court. After review, that court entered a decree vacating the order of the Commission and dismissing the suit. On appeal by the Commission to this Court, the decision of the chancery court was affirmed, this Court saying:
Inasmuch as no definitions, guidelines or standards of what constituted an unreasonable extension of credit were ever drawn up and circulated among the milk handlers and retail stores, and inasmuch as no warning whatsoever was given Fant's Sunflower Food Store that it was violating any rule or statute and should desist therefrom or suffer suspension of its license or pay a penalty, we agree with the Chancery Court that the action of the Commission was unjustified, and that it was arbitrary, capricious, discriminatory, unreasonable and unfair.
In reaching the conclusion that this case must be reversed and the order revoking Miller's license vacated, the necessity for maintaining control of narcotics and harmful *192 drugs is in no way intended to be minimized. Nor do we discount the laudable efforts of the Board of Pharmacy directed toward that end. Certainly there are offenses and derelictions in the practice of pharmacy, particularly in dealing with controlled substances, capable of being explicitly charged and clearly proven, which would justify revocation of a pharmacist's license. But in this case the decree appealed from must be reversed and the order of the Board of Pharmacy revoking appellant's license vacated and set aside.
Reversed and the order of the Mississippi State Board of Pharmacy vacated and set aside.
RODGERS, P.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.