## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CC-01338-SCT

*JOSE M. MONTALVO, M.D.*

*v.*

*MISSISSIPPI STATE BOARD OF MEDICAL LICENSURE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/92 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| | FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | EDWARD P. LOBRANO, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LARRY STROUD |
| | STAN T. INGRAM |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 3/14/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/4/96 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a November 25, 1992 order of the Hinds County Chancery Court, First Judicial District, affirming the decision of the State Board of Medical Licensure to not reinstate Dr. Montalvo's medical license, which was revoked in 1987 after he was convicted on federal money laundering charges. Finding that the Board's decision was neither arbitrary nor capricious, and further, that it was supported by the evidence, we affirm the chancellor's decision.

**I.**

¶2. Dr. Jose Montalvo is a pediatric endocrinologist who has been licensed to practice his specialty in this state since 1961. He has worked as a physician and as a teacher at the University Medical Center. In 1986, Dr. Montalvo was convicted on one count of conspiring to defraud the United States government pursuant to 18 U.S.C. § 371 and found not guilty of conspiring to import and distribute marijuana. Finding that there was sufficient evidence for a jury to determine that Montalvo had been involved knowingly in a

money laundering scheme, the Fifth Circuit affirmed the United States District Court's decision in *United States v. Montalvo,* 820 F.2d 686, 690 (5th Cir.1987).

¶3. Pursuant to Miss.Code Ann. § 73-25-29(6) (1995), which provides for the suspension or revocation of a medical license in the event of a licensee's conviction for a felony or misdemeanor involving moral turpitude, the State Board of Medical Licensure suspended Montalvo's license on January 15, 1987.

¶4. Dr. Montalvo received a five year prison sentence, but served only two years. After the United States Parole Commission issued a "Certificate of Early Termination" on January 19, 1990, discharging him from its jurisdiction, Dr. Montalvo began his efforts to have his medical license reinstated. The Board of Medical Licensure denied Montalvo's petition for reinstatement on March 26, 1990, stating that "Licensee's continued efforts to de-emphasize the nature and seriousness of his offense reflects a lack of remorse and exercise of poor judgment." Montalvo petitioned the Board a second time, making an informal appearance on July 18, 1991. Again, the Board rejected his petition, this time noting in its July 26, 1991 opinion that:

> Contrary to his previous appearance before the Board, Licensee now openly admits his past misconduct and conviction before the United States District Court, including acknowledgment that the Government's case was based in part on the fact that Licensee participated in the laundering of drug money. Although Licensee exhibited remorse before this Board, this does not necessarily mean that he now possesses the requisite "good character" which the Mississippi Medical Practice Act and this Board requires.

On September 11, 1991, the Board determined that Dr. Montalvo should be afforded the opportunity for a "formal" appearance before the Board so that a "reportable action" might properly be taken. A hearing was held on January 16, 1992, and the Board again rejected Montalvo's plea in a January 17, 1992 Determination and Order. The Board again found that:

> The fact remains that Licensee was involved in laundering money and any reasonable and prudent person knows the connection between money-laundering and drug trafficking. As stated in the transcript of the Imposition of Sentence, the United States Government considers the laundering of drug money just as serious as drug dealing and drug possession itself, because drug traffickers by necessity have to deal in cash.

> \* \* \* \* \* \*

> His continued efforts to de-emphasize the nature and seriousness of his offense reflects a lack of remorse and exercise of poor judgment.

¶5. Dr. Montalvo filed notice of his appeal of the Board's decision to the Hinds County Chancery Court on March 17, 1992. Reviewing the record of the January 16, 1992 proceedings, the chancellor found that the Board had considered the four elements of reinstatement articulated in Miss.Code Ann. § 73-25-32(3). Without commenting on the sufficiency of the evidence, but noting that "the reviewing court will not substitute its judgment for that of the administrative body nor disturb its findings where there is substantial evidence to support such findings," *Southern Farm Bureau Casualty Co., Inc. v. National Bureau of Casualty Underwriters,* 254 Miss. 445, 181 So.2d 154, 156 (1965), the chancellor upheld the decision of the Licensure Board.

## II.

¶6. This Court does not review administrative agency decisions *de novo;* rather, it looks to see if the decision was supported by substantial evidence, or if it was arbitrary and capricious, beyond the power of the agency, or in violation of some constitutional or statutory right of the complaining party. *Mississippi State Board of Nursing v. Wilson,* 624 So.2d 485, 489 (Miss.1993); *Mississippi State Tax Commission v. Mississippi-Alabama State Fair,* 222 So.2d 664 (Miss.1969). There is a rebuttable presumption in favor of the agency decision and the burden of proof is on the party challenging that decision. *Wilson,* 624 So.2d at 489; *County Board of Education of Alcorn County v. Parents and Custodians of Students at Rienzi School Attendance Center,* 251 Miss. 195, 168 So.2d 814, 818 (1964). This Court further "give[s] due deference to the factual findings of the administrative agency and to the chancellor who adopted the same findings." *State Farm Insurance Company v. Gay,* 526 So.2d 534, 535 (Miss.1988). A decision supported by substantial evidence will not be overturned; only where the decision is arbitrary and capricious will the courts intervene. *State Board of Psychological Examiners v. Hosford,* 508 So.2d 1049, 1054 (Miss.1987).

## III.

¶7. Dr. Montalvo first asserts that the Board of Medical Licensure's decision not to reinstate his license is arbitrary and capricious and unsupported by the evidence in the record. In its January 17, 1992 order[1], the Board found:

> The fact remains that Licensee was involved in laundering money and any reasonable and prudent person knows the connection between money laundering and drug trafficking. As stated in the transcript of the Imposition of Sentence, the United States Government considers the laundering of drug money just as serious as drug dealing and drug possession itself, because drug traffickers by necessity have to deal in cash.

> \* \* \* \* \* \*

> His continued efforts to de-emphasize the nature and seriousness of his offense reflects a lack of remorse and exercise of poor judgment.

¶8. Miss.Code Ann. § 73-25-32(3) provides for the reinstatement of medical licenses as follows:

> In determining whether the disciplinary penalty should be set aside and the terms and conditions, if any, which should be imposed if the disciplinary penalty is set aside, the board of medical licensure may investigate and consider all activities of the petitioner since the disciplinary action was taken against him, the offense for which he was disciplined; his activity during the time his certificate was in good standing, his general reputation for truth, professional ability and good character; and it may require the petitioner to pass an oral examination.

Montalvo contends that in making its decision, the Board disregarded the criteria for reinstatement set forth in the statute as well as the testimony of the witnesses who spoke on his behalf at the January 16, 1992 hearing and at earlier proceedings. His entire appellate brief is devoted to demonstrating that these various statements spoke to the elements of § 73-25-32(2).

¶9. The Board's witness, Dr. Carl Evers, who had worked with Dr. Montalvo and the University Hospital and on the Executive Committee of Clinical Associates, with which Montalvo also had been affiliated, was called to testify regarding Dr. Montalvo's "general reputation for truth, professional ability and good character." While impressed with Dr. Montalvo's professional qualifications and accomplishments, Dr. Evers testified that his reputation for truth and veracity was not good in light of his conviction and his second wife's conviction for embezzlement from Clinical Associates.

¶10. The record indicates that the Board was presented with and considered evidence of Dr. Montalvo's character, professional abilities and activities both before and after his conviction. He, however, was convicted of a felony involving moral turpitude. Moreover, Miss.Code Ann. § 99-19-35 provides that:

> A person convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury or forgery, embezzlement, or bigamy, shall not be allowed to practice medicine or dentistry, or be appointed to hold or perform the duties of any office of profit, trust, or honor, unless after full pardon for the same.

The crime of committing fraud against the federal government through money laundering is analogous to the enumerated crimes above which, absent a full pardon, forever bar a doctor or dentist from again practicing his profession. Especially given this statutory directive, it cannot be said that the Board's decision was arbitrary and capricious.

## IV.

¶11. Dr. Montalvo further asserts that a medical license is "a valuable property right" which, even once revoked, cannot be "arbitrarily and capriciously" denied. This Court, indeed, has held that the license to practice medicine is a valuable property right. *Miller v. State Board of Pharmacy,* 262 So.2d 188, 189 (Miss.1972), citing 41 Am.Jur., Physicians and Surgeons, § 44 at 172 (1942). In *Mississippi State Board of Nursing v. Wilson,* 624 So.2d 485, 494 (Miss.1993), a nursing license was categorized as a "revocable privilege," which, "much like a license to practice medicine and dentistry, represents a property interest, not a fundamental right." There, as in *Miller,* we reiterated that, as such, the licensee is entitled to procedural due process--nothing more and nothing less. *Wilson,* 624 So.2d at 494-495; *Miller,* 262 So.2d at 189. In pursuing the reinstatement of his license, Dr. Montalvo was afforded the same due process rights he would have had in defending its revocation: he was provided with the opportunity to be heard, to present witnesses, to cross-examine the Board's witnesses, and to be represented by the attorney of his choice. Further, the record indicates that he was given ample notice of all hearings on the matter and a detailed explanation of why his license was not reinstated. The requirements of procedural due process having been satisfied, it cannot be said that Montalvo is entitled to anything more. Moreover, our standard of review does not distinguish between "valuable property rights" and other matters; this Court will not uphold *any* administrative agency decision it finds to be arbitrary and capricious. Accordingly, we find no merit in this assignment of error.

## V.

¶12. In *Miller v. State Board of Pharmacy,* 262 So.2d 188 (Miss.1972), we stated that proceedings for the revocation of a professional license are not criminal in nature, but cited other authority for the proposition that statutes authorizing revocation of a medical license "are highly penal and must be construed in the physician's favor." *Id.* at 189-190, quoting 41 Am.Jur., Physicians and Surgeons, § 44 at 172 (1944).

See also *Hogan v. Mississippi Board of Nursing,* 457 So.2d 931, 934 (Miss.1984); *Boring v. Mississippi State Board of Dental Examiners,* 300 So.2d 135, 138 (Miss.1974) ("statutes permitting revocation of licenses are penal in nature and must be strictly construed against a governmental body attempting to enforce such a penalty.").

¶13. Dr. Montalvo, again apparently seeking to refine the standard of review in licensure cases, asserts that Miss.Code Ann. § 73-25-32, which deals with reinstatement, as distinguished from revocation of medical licenses, is penal in nature and should be construed in favor of the physician and against the administrative agency. Citing no meaningful authority for this position, he contends that the same law that is applicable to statutes providing for revocation of licenses, e.g. *Miller,* should be applicable to those providing for reinstatement of licenses. The absence of authority given in support of his argument, however, precludes any further consideration by this Court. *Grey v. Grey,* 638 So.2d 488, 491 (Miss.1994); *Matter of Estate of Mason v. Fort,* 616 So.2d 322, 327 (Miss.1993); *R.C. Petroleum, Inc. v. Hernandez,* 555 So.2d 1017, 1023 (Miss.1990).

## VI.

¶14. Dr. Montalvo has failed to overcome the rebuttable presumption in favor of the Board's decision. Further, he has failed to show that the Board's actions were either arbitrary and capricious or unsupported by the evidence. There is substantial evidence to support the Board's decision to not reinstate Montalvo's license; to wit, the seriousness of the felony for which he was convicted. Therefore, we affirm the chancellor's order affirming the Board's decision.

¶15. JUDGMENT IS AFFIRMED.

DAN M. LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.

1. Only the January 17, 1992 order, which was appealed to the chancery court, is at issue in this appeal.