# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CC-00328-SCT

*OLUFEMI OKONUREN, M.D. a/k/a OLUFEMI*
*OLUSOLA OKUNOREN, M.D.*

*v.*

*MISSISSIPPI STATE BOARD OF MEDICAL*
*LICENSURE*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/94 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILBUR O. COLOM |
| | CHRISTOPHER D. HEMPHILL |
| ATTORNEY FOR APPELLEE: | STANLEY T. INGRAM |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKER'S COMPENSATION) |
| DISPOSITION: | AFFIRMED - 1/30/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

On March 22, 1994, the Chancery Court of the First Judicial District of Hinds County affirmed an order rendered on September 27, 1991, by the Mississippi State Board of Medical Licensure (Board), revoking the Mississippi medical license of Olufemi O. Okonuren, M.D., (Okonuren). The Board's revocation order was based on a finding that Okonuren was in violation of Sub-Section (11) of Miss. Code Ann. Section 73-25-29, as a result of Okonuren having received a Final Sanction Notice imposed by the United States Department of Health and Human Services (USDHHS), Office of Inspector General, based on a finding of failure to meet professionally recognized standards of care. A certified copy of the Notice of Final Sanction was presented as prima facie evidence. Aggrieved by

the Board's order, Okonuren assigns as error the following issues:

*1. Whether, under the circumstances, there was a denial of due process by the Board by overruling Okonuren's motion to issue subpoenas on his behalf, i.e., request by Okonuren for issuance of subpoenas made during the hearing and presentation of the State's case, where Okonuren had adequate notice of said hearing and agreed with commencement of the same?*

*2. Whether the copy of the "Final Sanction Notice" from the United States Department of Health and Human Services, Office of Inspector General, was certified, as required by Section 73-25-29(11), necessary to establish a prima facie case?*

*3. Whether the basis for disciplinary action, i.e., violation of Sub-Section (11), of Section 73-25-29 violates the prohibition against ex post facto laws in the Mississippi Constitution?*

*4. Whether the Board's action was based on a "Final Sanction" imposed by the Department of Health and Human services, office of Inspector General?*

*5. Whether the "Final Sanction" was based upon a finding of "incompetency" or "failure to meet professionally recognized standards of health care," as required by Subsection (11), Section 73-25-29?*

Upon review of the arguments made, we affirm the findings and sanction imposed by the Mississippi State Board of Medical Licensure.

## FACTS

Following a hearing on September 26, 1991, the Board entered an order on September 27, 1991, revoking the Mississippi medical license of Olufemi O. Okonuren, M.D., based on a finding that Okonuren was in violation of the Mississippi Medical Practice Act, Sub-Section (11) of Section 73-25-29, as a result of having received a Final Sanction imposed by the USDHHS, Office of Inspector General. The Final Sanction was based on a finding of failure to meet professionally recognized standards of care, a certified copy of the Notice of Final Sanction being prima facie evidence thereof. The proceedings which culminated in the September 27, 1991, revocation order were initiated on February 11, 1991, by issuance of a summons, charging Okonuren with violation of the Medical Practice Act as enumerated above. The specific allegations were set forth by an Affidavit of Richard P. Allison, Chief Investigator of the Board, attached to and made a part of the summons.

On March 11, 1991, Okonuren, through his then counsel, Stella L. Terrell, filed a "Motion to Dismiss or, in the Alternative, Place Proceedings in Abeyance." Okonuren's motion was premised on the fact that he had perfected an appeal of the sanction notice of the USDHHS to a Federal Administrative Law Judge. The administrative appeal was set for hearing on June 4, 1991. The Board initially considered this motion at its regularly scheduled meeting on March 21, 1991, and chose not to rule on the motion at that time. In lieu thereof, Okonuren's counsel and the complaint counsel for the Board were requested to submit briefs. The motion and briefs were then considered by the Board at its regularly scheduled meeting on May 9, 1991. After full consideration of all exhibits and oral

argument, the Board denied Okonuren's motion.

Following denial of the motion, and prior to proceeding with the hearing, the Board was temporarily restrained from proceeding with the hearing by order of the Chancery Court of the First Judicial District of Hinds County (Civil Action File No. 145,581). As a result, the Board placed in abeyance any proceedings until such time as a final decision was rendered by the Chancery Court. On July 16, 1991, the Chancery Court rendered its order and denied Okonuren's petition for permanent injunctive relief against the Board. The hearing was the set for July 18, 1991. On said date, the Board considered and denied Okonuren's third motion for a continuance. As a result of the hearing, Okonuren's certificate to practice medicine in the State of Mississippi was revoked. On August 16, 1991, Okonuren, through new counsel, Wilbur O. Colom, filed a motion to lift the suspension and set the matter for rehearing. On August 25, 1991, the complaint counsel for the Board, at the request of the Board's Executive Officer, Frank J. Morgan, Jr., M.D., corresponded with Colom and advised him that the Board had scheduled his motion for consideration at its next regularly scheduled meeting on September 26, 1991. Attorney Colom was then advised that, in the event the Board granted a rehearing, Colom should be ready at that point to proceed with a full hearing.

Okonuren's motion to lift suspension and set matter for hearing was considered by the Board at 10:00 a.m. on September 26, 1991. After hearing argument of counsel, the Board found Okonuren's motion to be well taken. By agreement of counsel, the Board then proceeded with a new hearing. At said hearing, evidence and testimony, as hereinafter discussed, was presented by the Board's complaint counsel as well as by Okonuren's attorney, Wilbur O. Colom. Following the hearing, the Board rendered its order on September 27, 1991, revoking Okonuren's certificate to practice medicine in Mississippi.

Okonuren perfected his appeal to the Chancery Court of the First Judicial District of Hinds County. Pending the appeal, the Court rendered an order on November 6, 1991, staying the revocation, thereby permitting Okonuren to practice medicine in the State of Mississippi. As provided by statute and case law, the appeal was heard by the Chancery Court based upon the record made before the Board. After consideration of the record and briefs of both parties, the Chancery Court rendered its "Order and Memorandum of Opinion" on March 22, 1994, affirming the September 27, 1991, revocation order of the Board. Chancellor Patricia Wise concluded the court's order as follows:

> This Court finds that [Okonuren] and his attorney were afforded adequate notice and opportunity to be heard at the September 26, 1991, hearing of the Board as outlined in the Board's Exhibit Number 7, and further, that the Board's decision was triggered by a "Final Sanction" imposed by the Department of Health and Human services and is a ground for revocation of license in accordance with Subsection (11) of Section 73-25-29 of the Mississippi Code Annotated, and that the November 30, 1990, "Final Notice" came about after the July 1, 1989, amendment of Subsection (11) and is not a violation of the ex post facto laws of the Mississippi Constitution as outlined in Board's Exhibit Number 5. Further, the Board's decision was based on a finding of failure of [Okonuren] to meet professionally recognized standards of health care by ordering unnecessary lab tests as outlined in Board Exhibit Number 4.

> It is the opinion of this Court that the Board's decision was supported by substantial evidence and was not arbitrary and capricious. This Court finds that the Board's determination and order

rendered September 27, 1991, shall be affirmed.

Pursuant to petition filed by Okonuren, the Chancery Court rendered an order on July 7, 1994, staying the licensure revocation pending appeal to the Mississippi Supreme Court. The stay was conditioned on Okonuren practicing in a structured, supervised environment wherein "he will have no responsibility (directly or indirectly) as to the billing and financial decisions related to patient treatment." Further, the court ordered that a selected number of patient files be reviewed by a supervising physician, "to ascertain the medical necessity and medical reasonableness for the presented complaint and diagnosis." The results of the quarterly review are to be provided to both the Board and the Chancery Court.

## FACTS

As the result of an investigation performed by the Mississippi Foundation for Medical Care, Inc. (MFMC), sanction hearings were initiated against Okonuren on or about January 16, 1990. The MFMC is the Peer Review Organization (PRO) for the State of Mississippi, charged with authority to review services rendered by Medicaid providers and to make recommendations concerning provider Sanction. Following the hearings, it was the recommendation of MFMC to the Division of Medicaid, that a Sanction be imposed, i.e., provider status be revoked for a period of three years with consideration given to recovering monies on lab tests that were deemed unnecessary or those which were performed without medical indication or medical necessity. It was determined that Okonuren had ordered more laboratory tests than similar Medicaid providers in the State. A review of random office records revealed the following: 82% of his urinalyses were found to be medically unnecessary; the urinalyses did not include microscopic analysis which reduced its value and was not a complete test; 81% of the hemoglobins and hematocrits were found to be medically unnecessary; 97% of the blood glucose determinations were found to have no medical indication documented; 79% of Okonuren's EKG's were found to have no medical indication documented and there were no written interpretations on the EKG's and none were reviewed by an internist or cardiologist. In relation to its investigation and conclusions, the MFMC provided Okonuren a notice on February 1, 1990, of "Substantial Violations in a Substantial Number of Cases" which resulted in its conclusion that Okonuren had "substantially violated the obligations under Section 1156 of the Social Security Act." In said notice, Board Exhibit 4, it is stated:

> Section 1156 of the Social Security Act, 42 U.S.C. Section 1320c-5, imposes certain obligations upon health care practitioners and other persons who furnish or order services under Medicaid. These obligations are to assure that the services are: (1) provided economically and only when, and to the extent they are medically necessary; (2) of a quality that meets professionally recognized standards of health care; and (3) supported by the appropriate evidence of medical necessity and quality of the services in a form and fashion as may be required.

> On the basis of additional information provided in response to the above letters, Mississippi Foundation for Medical Care has determined that you have failed to comply with the obligations imposed on you by Section 1156 of the Social Security Act. Therefore, the Mississippi Foundation for Medical Care has submitted a recommendation to the Division of Medicaid,

Office of the Governor, State of Mississippi, that you be excluded from participating in the Medicaid program for a period of three (3) years and required to pay to the Division of Medicaid, State of Mississippi, a monetary penalty in the amount of expenses deemed to have occurred as a result of unnecessary lab testing as a condition for your continued participation in the Medicaid program.

As a result of the above, the Mississippi Division of Medicaid sanctioned Okonuren, effective May 1, 1990, for a period of three years.

On November 30, 1990, the USDHHS, through the Office of Inspector General, Washington, D.C., notified Okonuren that he was excluded from participation in the Medicare/Medicaid programs. The Inspector General extended the sanction to include Medicare for an indefinite period of time. The November 20, 1990, notice did not propose an exclusion. To the contrary, the notice implemented the exclusion, effective 20 days after date of said notice. The first paragraph of said notice stated, to-wit:

This is to notify you that you <u>are being excluded</u> from participation in the Medicare program (42 U.S.C. 1395, et seq.), and any State health care program as defined in Section 1128(h) (42 U.S.C. 1320a-7(h)) of the Social Security Act, until you are reinstated by the State or Federal program which excluded or suspended you. These actions are effective 20 days from the date of this letter, and are due to the fact that you have been excluded or suspended by a Federal or State health care program for reasons bearing on your <u>professional competence, professional performance, or financial integrity</u>.

(Emphasis added.)

The original of the above notification was sent directly to Okonuren. A copy of same was introduced before the Board as Board Exhibit No. 5. The copy was certified as being true and correct by James F. Patton, Director, Health Care Administrative Sanctions Staff , Office of Investigations, Office of Inspector General, USDHHS, as chief custodian of the records, said certification being sworn before a notary public on December 20, 1990.

Okonuren perfected an appeal of the alleged Final Sanction by the Inspector General of the USDHHS to the Department Appeals Board, Civil Remedies Division. On June 4, 1991, an in-person evidentiary hearing was held in Jackson, Mississippi, before Administrative Law Judge Steven T. Kessel. At the hearing, evidence and testimony was presented, including testimony from Okonuren and others. In response to motions for summary disposition filed on behalf of both parties, it was determined that the Inspector General had proposed to modify Okonuren's exclusion to allow him to reapply for reinstatement to the Medicare and Medicaid programs on May 1, 1993, the date when Okonuren would be eligible to reapply to Mississippi Medicaid. As a result of said motions and in-person evidentiary hearing, the Administrative Law Judge affirmed the actions of the Inspector General, as amended, and concluded that the exclusion of Okonuren from participating in Medicare and Medicaid was not extreme or excessive. The decision of the Administrative Law Judge, dated August 23, 1991, was introduced before the Board as Board Exhibit No. 6. In his decision, the Administrative Law Judge made the following pertinent Findings of Fact:

6. A MFMC review of Petitioner had found that Petitioner had: 1) poorly documented his

reasons for ordering laboratory work; 2) ordered unnecessary laboratory work; 3) performed inadequate and very poor quality EKG'S; 4) performed incomplete urine tests; 5) maintained inadequate records from which to ascertain his treatment of his patients; and 6) demonstrated a risk to patients by giving "inappropriate diagnosis" of patients' illnesses, thereby placing his patients at risk.

. . . .

8. Petitioner was suspended from participation in a State health care program for reasons bearing on his professional performance.

. . . .

18. There is a pattern, established by specific treatment records in evidence, of Petitioner routinely ordering certain tests of some patients, specifically hemoglobins, hematocrits, urinalyses, and blood sugars, virtually every time those patients visited him.

19. There is nothing in the patient records that are in evidence in this case to show that Petitioner actually evaluated the tests that he ordered or that he systematically recorded the results of these tests in any way meaningful to the treatment of those patients.

20. There is no documented medical necessity for most of the laboratory tests ordered by Petitioner in these treatment records.

. . . .

22. Petitioner knew or should have known that the Mississippi Medicaid program did not authorize reimbursement for the tests ordered by Petitioner.

23. Petitioner should have known that the tests systematically ordered by him were not medically justified.

. . . .

28. Petitioner's pattern of ordering tests which were not medically justified and claiming reimbursement from Mississippi Medicaid for those tests when he knew or should have known that they were not reimbursable items or services establishes that Petitioner is not a trustworthy provider of care.

29. Petitioner's lack of trustworthiness is further established by his refusal to admit that his conduct was improper.

30. Given Petitioner's lack of trustworthiness, a substantial exclusion from participating in Medicare and Medicaid is reasonable.

(Board's Exhibit #6.)

As indicated above, the Inspector General of the USDHHS, as well as the Administrative Law Judge, found that Okonuren's conduct failed to meet professionally recognized standards of health care. In

addition, the Administrative Law Judge found Okonuren to be manifestly untrustworthy, stating in part:

> I find that [Okonuren] is a manifestly untrustworthy provider. The evidence in this case establishes that [Okonuren] systematically ordered laboratory tests of Medicaid recipients under circumstances where there was no documentation supporting any need for such tests. [Okonuren] ordered these tests in circumstances where there was no evidence that his patients suffered from conditions whose diagnosis and treatment would benefit from the laboratory testing which [Okonuren] ordered. Frequently, the complaints manifested by [Okonuren]'s patients were totally unrelated to the tests which [Okonuren] ordered. In some cases, [Okonuren] persisted in ordering repetitive laboratory testing of patients where initial test results did not reveal the presence of medical problems. Furthermore, [Okonuren] persisted in claiming reimbursement for unnecessary laboratory tests from Mississippi Medicaid after Mississippi Medicaid explicitly told [Okonuren] that his pattern of ordering tests was not medically justified.

> The fact that [Okonuren] persisted in ordering and claiming reimbursement from Mississippi Medicaid for unnecessary laboratory tests over a lengthy period of time despite being told by Medicaid that his actions were improper is strong evidence that [Okonuren] is not a trustworthy provider of care. See 42 C.F.R. 1001.125(b)(1). That evidence is reinforced by [Okonuren]'s refusal to acknowledge in his statements to Mississippi Medicaid and in his testimony at the hearing which I conducted that he had done anything that was improper. See 42 C.F.R. 1001.125(b) (6). Notwithstanding strong evidence to the contrary, [Okonuren] asserted that his practice in ordering and claiming reimbursement for laboratory tests was "perfect." Tr. 142. [Okonuren]'s refusal to concede even the possibility that he had engaged in improper practices proves not only his failure to accept -- responsibility for his acts, but strongly suggests a Propensity to commit additional similar misconduct in the future.

> It is precisely because [Okonuren] is capable of contravening the law when he finds the law to be a hindrance, and because he does not accept -- the wrongfulness of his conduct, that I find [Okonuren] to be untrustworthy.

(Board's Exhibit #6; emphasis added.)

Each of the above findings by the Administrative Law Judge was considered by the Board prior to rendering its decision on September 27, 1991, to revoke Okonuren's certificate to practice medicine in the State of Mississippi.


## STANDARD OF REVIEW

First of all, factual findings of the Commission are prima facie correct, and "the reviewing court cannot substitute its judgment for that of the Commission and disturb its findings where there is any substantial basis in the evidence for such findings or where the ruling of the commission is not capricious or arbitrary." *Loden v. Mississippi Public Service Comm'n*, 279 So. 2d 636, 641 (Miss 1973). *See also* *Montalvo v. Mississippi State Bd. of Medical Licensure*, 671 So. 2d 53, 57 (Miss. 1996); *Mississippi Public Service Comm'n v. Alabama Great Southern Railroad Company*, 255

So. 2d 665, 667 (Miss. 1971). Although there is a presumption of regularity, and while the "arbitrary and capricious" standard of review is highly deferential, it is by no means a "rubber stamp." *Mississippi State Bd. of Nursing v. Wilson*, 624 So. 2d 485, 489-90 (Miss. 1993) (quoting *United States v. Garner*, 767 F.2d 104, 116 (5th Cir.1985)).

Our Constitution does not permit this Court to retry matters *de novo* on appeal from administrative agencies. *Mainstream Savings & Loan Association v. Washington Federal Savings & Loan Association*, 325 So. 2d 902, 903 (Miss. 1976).

The appeal from an administrative agency is a limited one. This Court will entertain the appeal only to determine whether or not the order of the agency was (1) supported by substantial evidence; (2) arbitrary or capricious; (3) beyond the power of the administrative agency to make; or (4) violated some constitutional or statutory right of the complaining party. *Mainstream Savings & Loan Association v. Washington Federal Savings & Loan Association*, 325 So. 2d 902, 903 (Miss. 1976) (citing *Mississippi Tax Comm'n v. Mississippi-Alabama State Fair*, 222 So. 2d 664 (Miss.), *cert. denied,* 396 U.S. 940 (1969); *Loftin v. George County Board of Education*, 183 So. 2d 621 (Miss. 1966); *City of Meridian v. Davidson*, 211 Miss. 683, 53 So. 2d 48 (1951)).

Administrative agencies have only such powers as are expressly granted to them or those necessarily implied via their grant of authority. *State ex rel. Pittman v. Mississippi Public Service Comm'n,* 538 So. 2d 367, 373 (Miss. 1989). The term "necessarily implied" is more restrictive than "implication." "Necessarily implied" refers to the logical necessity and means that no other interpretation is permitted by the words of the instrument construed. It has been defined as an implication which yields so strong a probability of intent that any intention to the contrary cannot be supposed leaving no room for doubt. *Strong v. Bostick*, 420 So. 2d 1356, 1361 (Miss. 1982) (quoting 42 C.J.S. *Implication* at 405 (1944)).

Furthermore, any such power exercised by an administrative agency must be found within the four corners of the statute under which it operates. *Strong v. Bostick*, 420 So. 2d 1356, 1361 (Miss. 1982) ; *Mississippi Milk Comm'n v. Winn-Dixie*, 235 So. 2d 684 (Miss. 1970). If the authority of the administrative agency is not found to be expressly granted or necessarily implied, then the agency's decision is void. *Farrish Gravel Co., Inc. v. Mississippi State Highway Comm'n*, 458 So. 2d 1066, 1068 (Miss. 1984).

## LAW

**1. *Whether, under the circumstances, there was a denial of due process by the Board by overruling Okonuren's motion to issue subpoenas on his behalf, i.e., request by Okonuren for issuance of subpoenas made during the hearing and presentation of the State's case, where Okonuren had adequate notice of said hearing and agreed with commencement of the same?***

Okonuren argues that he was denied due process of law by the Board's refusal to issue subpoenas on his behalf and that failure to do so constitutes reversible error. Okonuren states that § 73-25-27 of Miss. Code of 1972, which governs disciplinary proceedings before the Board, provides for the issuance of subpoenas and grants authority to the Board to issue the same.

A request to the Board to issue subpoenas on behalf of a physician should be timely and reasonable. Okonuren's request did not come until <u>after</u> the hearing had commenced and after introduction of the first two of the State's exhibits. Okonuren and his attorney would have this Court believe that they were not notified of the hearing to be held on September 26, 1991. In fact, at page 9 of Appellant's Brief, Okonuren states, "no written notice was given to Dr. Okonuren or his counsel of any of the proceedings." The facts belie this assertion. Both Okonuren and his counsel were clearly advised in advance of the hearing, and thereby given an opportunity to seek discovery, request subpoenas, and introduce witnesses and papers on Okonuren's behalf. Evidence that Okonuren and his attorney knew of the scheduled hearing date is set forth in the transcript. As noted above, Colom petitioned to lift the prior disciplinary action of the Board against Okonuren which was rendered July 26, 1991. Colom filed his "Motion to Lift Suspension and Set Matter for Hearing" with the Board on August 16, 1991. In response to this motion, the Complaint Counsel for the Board, at the request of the Board's Executive Officer, Frank J. Morgan, Jr., M.D., corresponded with Colom on August 5, 1991. In the letter, Colom was advised that his motion would be heard by the Board on September 26, 1991. The third paragraph of this letter states as follows:

> Your motion on behalf of Dr. Okunbren [sic] will be the first item placed on the September agenda. This will also give you a better opportunity to present and argue the motion. In the event the Board rules in Dr. Okonuren's favor, <u>you</u> <u>should be ready at that point to proceed</u> <u>with</u> <u>a full hearing</u>.

(Emphasis added.)

The above letter was received by Colom's office on August 27, 1991, as evidenced by the return receipt. Therefore, Okonuren and his attorney had more than the statutory period of time in which to prepare for a hearing, which could have included timely requests to issue subpoenas and discovery. In light of the above correspondence, we find it is disturbing that Okonuren states in his brief, that "[t]he Board offered the justification that Dr. Okonuren should have asked for the subpoenas earlier despite the fact that it was only at the motion hearing that Dr. Okonuren learned that a rehearing would be held on the same day." In this regard, Hon. Patricia Wise, Chancellor, correctly held:

> It is this Court's opinion that Okonuren and his attorney were clearly advised in advance of the hearing which was held on September 26, 1991. The appellant was given an opportunity to issue subpoenas and conduct discovery in a manner which did not violate Okonuren's due process.

In addition to the above, Okonuren agreed to proceed with the hearing on September 26, 1991. After Colom presented his motion to lift the prior disciplinary action, Ms. Sara DeLoach, Special Assistant Attorney General assigned to the Board, asked, "Is everyone ready to go to hearing today?" In response to this inquiry, Colom stated, "I am ready. I am ready." The Board then went into executive session and granted Okonuren's motion to lift the prior disciplinary action. By same order, the Board directed that the matter proceed. It was not until after complaint counsel had introduced the first two exhibits that Okonuren objected and requested that the Board issue subpoenas. In order to issue subpoenas, it would have been necessary for the Board to stop the proceedings and locate individuals who had not been previously notified or given an opportunity to arrange their schedules to attend. It is the well-established rule of law in this and other states that attorneys requesting a continuance or

leave of court to subpoena witnesses must show due diligence on their part prior to making such a request. *See* ***Terrel v. Mississippi Bar***, 662 So. 2d 586, 589-90 (Miss. 1995); ***Griffin v. State***, 494 So. 2d 378 (Miss. 1986); ***Harper v. State***, 394 So. 2d 311 (Miss. 1981); ***State v. Dorning****, 682 S.W.2d 221 (Tenn. Cr. App. 1984).

The basis for Okonuren's request for subpoenas after initiation of the disciplinary proceeding was to permit cross-examination of individuals identified as signatory parties to Board Exhibit Nos. 3 and 4. Yet, at the same time, Okonuren introduced as a part of his testimony, three affidavits from individuals who were not personally present and subject to cross-examination.

Okonuren asserts the failure of the Board to issue the subpoenas is reversible error. We disagree. First, the transcript reflects that two of the witnesses whom Okonuren wished to call were individuals with the Mississippi Foundation for Medical Care, Inc. (MFMC), who signed correspondence from MFMC (Board's Ex. 3 and 4). The documentation set forth as Exhibits 3 and 4 is not only corroborated but also substantiated by the Final Sanction Notice introduced as Board's Exhibit 5 and the findings of fact of Administrative Law Judge Steven T. Kessel as set forth in Board's Exhibit 6.

The identity of the signatory parties to the correspondence from MFMC, introduced as Board Exhibits 3 and 4, could easily have been ascertained by Okonuren through discovery, something which he chose not to do.

Therefore, this Court concludes this assignment of error by Okonuren is without merit.

### 2. Whether the copy of the "Final Sanction Notice" from the USDHHS, Office of Inspector General, was certified, as required by Section 73-25-29(11), necessary to establish a prima facie case?

Okonuren contends that the Board failed to meet the requirements set forth in sub-section (11) of § 73-25-29 by failing to introduce a certified copy of the Notice of Final Sanction imposed by the USDHHS, Office of Inspector General. The last sentence of this section states that a "certified copy of the Notice of Final sanction being prima facie evidence thereof." In other words, to meet the burden of proof necessary to impose disciplinary action against a physician, under this particular section, all that the Board needs to do is introduce a certified copy of the Notice of Final Sanction. This Court finds that is exactly what the Board did.

The December 8, 1990, Final Sanction Notice was introduced as Board Exhibit 5. Two separate documents precede the actual notice itself. First, is a transmittal letter from William Libercci, Deputy Director of Health Care Administrative Sanctions, Office of Investigations, addressed to the Board's complaint counsel. In the letter, Libercci stated: "Enclosed is a certified copy of the <u>Final Sanction Notice</u> sent to Dr. Okonuren." (Emphasis added.) The second page is the actual certification thereof. Again, the facts belie Okonuren's assertion. The entire certification reads as follows:

CERTIFICATION

I, James F. Patton, Director, Health Care Administrative Sanctions Staff, Office of Investigations, Office of Inspector General, U. S. Department of Health and Human Services, and chief custodian of records of same, do hereby certify that the enclosed copy is a true and

correct copy of the below listed original documents on file with the Health Care Administrative Sanctions Staff, Office of investigations, in the case of Olufemi Olusola Okonuren, M.D. Letter to Olufemi Olusola Okonuren, M.D., dated November 30, 1990.

The above certification was duly sworn before a notary public on December 20, 1990. Simply stated, this Court finds the Final Sanction Notice was clearly certified. Therefore, this Court concludes Okonuren's assertion is without merit and Board Exhibit 5 was sufficient, in and of itself, to establish a prima facie case against Okonuren.

> ### 3. Whether the basis for disciplinary action, i.e., violation of Sub-Section (11), of Section 73-25-29 violates the prohibition against ex post facto laws in the Mississippi Constitution?

On this issue Okonuren states that the conduct which constituted the basis for revocation of his license occurred two years prior to the effective date of the statute that is the basis for the revocation of his license. He asserts that such penal action violates prohibitions against the ex post facto law in the Mississippi Constitution.

This Court finds that Okonuren is factually and legally incorrect. Section 73-25-29 was amended to incorporate Sub-Section (11) by chapter 314, Laws of 1989, effective July 1, 1989. We do not disagree that some of Okonuren's conduct giving rise to the sanction, occurred prior to 1989. Notwithstanding, the primary event which triggers authority by the Board to take action is a "Final Sanction" imposed by the USDHHS, Office of Inspector General. The Notice of Final Sanction did not occur until <u>November 30, 1990</u>, well after the effective date of the act.

Notwithstanding the above, the prohibitions against ex post facto laws have no application whatsoever to proceedings before a state administrative agency. The ex post facto doctrine applies only to purely criminal proceedings. *See **Harisiades v. Shaughnessy**,* 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952) (ex post facto doctrine not applicable to deportation case); ***U.S. v. D.K.G. Appaloosas, Inc.,*** 829 F.2d 532 (5th Cir. 1987) (ex post facto doctrine not applicable to property forfeiture for drug violations), *cert. denied, **One 1984 Lincoln Mark VII Two-Door v. U.S.**,* 485 U.S. 976 (1988); ***U.S. v. 5708 Beacon Drive, Austin, Texas**,* 712 F.Supp. 525 (S.D. Miss. 1988) ( ex post facto doctrine not applicable to civil forfeiture proceedings), *aff'd,* 875 F.2d 859 (5th Cir. 1989).

> ### 4. Whether the Board's action was based on a "Final Sanction" imposed by the Department of Health and Human services, office of Inspector General?

Okonuren asserts that the Notice of Final Sanction rendered by the Inspector General of the USDHHS, is not a "Final Sanction" by reason of rights granted under the Social Security Act and related Federal Rules and regulations. In other words, Okonuren is attempting to apply a federal standard as to what is "final" and fails to understand the clear meaning of Sub-Section (11) of Section 73-25-29.

The specific event which triggers authority by the Board to take disciplinary action under Sub-Section (11) is described as follows:

> Final Sanctions imposed by the USDHHS, <u>Office of Inspector General</u>, or any successor federal

agency or office, based upon a finding of incompetency, gross misconduct or failure to meet professionally recognized standards of health care <u>imposed by the USDHHS, Office of Inspector General.</u>

(Emphasis added.)

"Final Sanction," as used in the Mississippi Medical Practice Act, simply means: (a) a sanction being enforced and in effect; and (b) implemented by the agency identified, i.e., office of Inspector General, USDHHS. The question of conclusiveness and finality of an administrative determination should take into consideration the specific language of the statute involved and the facts of each case. Simply stated, the term "final" as used in different situations conveys different meanings. The term is also used as indicating not that an administrative order is immune from judicial review or other kinds of interference or contests, but that it has reached a stage of completeness, i.e., is then in full force and effect. *See* 2 Am.Jur.2d *Administrative Law* § 483 (1964). More importantly, whether or not an administrative determination is final, depends primarily upon the intent of the legislature as expressed in the statute governing the proceeding.

The Final Sanction Notice was introduced as Board Exhibit No. 5. The transmittal letter to the complaint counsel of the Board clearly identified the document as the "Final Sanction Notice." This document clearly states that Okonuren was then being excluded from participation in the Medicare program. The fact that Okonuren, under federal statutes, had the right to appeal to an administrative law judge and then to the Departmental Appeals Board does not stay or otherwise alter the fact that Okonuren was then excluded from participation in the Medicare program for reasons bearing upon his "professional competence, professional performance or professional integrity."

Secondly, and most importantly, had the Mississippi Legislature intended to require a "final sanction" from an administrative law judge, Departmental Appeals Board or the Secretary of Health and Human Services, it could have simply so stated. Instead, the language clearly requires a final sanction "imposed by the USDHHS, <u>Office of Inspector General</u>." This is the very agency which imposed the "final sanction." The November 30, 1990, letter to Okonuren advising him of his exclusion from the Medicare program was from James F. Patton, Director, Health Care Administrative Sanctions Staff, Office of Investigations, <u>Office of Inspector General, U. S. Department of Health and Human Services</u>. Thus, this Court concludes the statutory prerequisites have been met and this issue is without merit.

> ### *5. Whether the "Final Sanction" was based upon a finding of "incompetency" or "failure to meet professionally recognized standards of health care," as required by Subsection (11), Section 73-25-29?*

Okonuren asserts that the final sanction imposed against him had nothing to do with incompetence, gross misconduct or failure to meet professionally recognized standards of care. He states that the Department of Health and Human Services made no findings themselves related to the issue, but based the findings upon an agency of the State of Mississippi which conducted an investigation and excluded Okonuren from participation in the State Medicaid program. Further, it is the position of Okonuren that in order for the Department of Health and Human Services to make a finding of incompetence, gross misconduct, or failure to meet recognized standards of health care, it must invoke its own administrative proceedings and give the accused due process. We disagree with

Okonuren's argument.

The agency at the state level which reviewed Okonuren's conduct is the Mississippi Foundation for Medical Care, Inc. As stated by the Administrative Law Judge (Finding of Fact No. 5, page 3 of Board Ex. 6), the MFMC is the "peer review organization (PRO) for the State of Mississippi." MFMC has a contract with the State of Mississippi to review services rendered by Medicaid providers in Mississippi, and to make recommendations concerning provider sanctions. Further, the Social Security Act contemplates the utilization of such state health care programs as a means to determine a physician's qualification to participate in the Medicare program at the federal level. Again, Administrative Law Judge Kessel recognized this when he concluded that, "Mississippi Medicaid is a state health care program within the meaning of Sections 1128(h) and 1128(b)(5)(B) of the Act." (Finding of Fact 7, page 3 of Board Ex. 6.) The Social Security Act clearly contemplates the use of such state agencies as the Mississippi Department of Medicaid and MFMC as a basis to review provider services. It was in response to such a review that Okonuren was found to have failed to meet professionally recognized standards of health care.

Okonuren further asserts that the only basis for his exclusion from the Medicare program was "unnecessary laboratory testing." As stated in the sanction notice dated November 30, 1990, Okonuren was advised that his exclusion from participation in the Medicare program was due to the fact that he had been excluded from a state health care program "for reasons bearing on your professional competence, professional performance or professional integrity." This fact was wellrecognized by both the Administrative Law Judge who reviewed the action of the Office of Inspector General, Department of Health and Human Services, and by the members of the Mississippi State Board of Medical Licensure.

In order to grasp the extent to which Okonuren's conduct failed to meet "professionally recognized standards of health care" one need only look at the November 30, 1990, Final Sanction Notice as well as the findings of fact set forth by the Administrative Law Judge. A number of such findings are noted hereinabove and we see no reason to repeat them here.

Okonuren was found to have performed medically unnecessary tests in such high percentages as to clearly deviate from "professionally recognized standards" and seriously questioning "Okonuren's ability to practice medicine as a trustworthy practitioner." Okonuren was found to have ordered unnecessary lab tests "virtually every time those patients visited him." Finally, it was the finding of MFMC, the Inspector General for the USDHHS, the Administrative Law Judge and the Board that Okonuren's conduct demonstrated a risk to patients by giving inappropriate diagnoses of patients' illnesses, thereby placing his patients at risk.

It is interesting to note that the Administrative Law Judge found Okonuren to be a "manifestly untrustworthy provider." Following his appearance before the Board and introduction of evidence both by complaint counsel and Okonuren, the Board found that Okonuren's testimony illustrates "little if any change in his attitude subsequent to the decision rendered by the Administrative Law Judge."

It is true that the Mississippi statute does not set forth lack of "financial integrity" or "untrustworthiness" as grounds for sanction. However, Okonuren's failure to meet "professionally recognized standards of health care," as clearly established in the record, was such as to compel the

Administrative Law Judge and Board to question Okonuren's financial integrity and trustworthiness.

Okonuren is asking this Court to review the facts and impose less discipline. This Court has stated, regarding qualifications of physicians: "The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance." ***Wong v. Carden Park Community Hospital****,* 565 So. 2d 550, 553 (Miss. 1990). Even more explicitly in ***Riddle v. Mississippi State Bd. of Pharmacy****,* 592 So. 2d 37 (Miss. 1991), this Court stated:

> We take (appellant's) complaint against the severity of the sanction as an invitation for this Court to separately evaluate the findings and the punishment. We decline the invitation. . . . Our traditional standard of review, whether or not arguably allows such a determination, does not obligate us to separately second guess an administrative agency's imposition of sanction. We take this position in recognition of the unique position administrative agencies hold. The agency charged with regulating certain activities knows best how to police its own. <u>This seems especially true where an agency commission comprised of fellow</u>practitioners . . . sits in judgment of one of its own.

592 So.2d at 43-44 (ellipses original; emphasis added).

## <u>CONCLUSION</u>

It is a well-established rule of law that whenever the record contains affirmative proof supporting the view of each side, the Court must defer to the Board's expertise and experience. ***State Bd. of Psychological Examiner v. Coxe****,* 355 So. 2d 669, 671 (Miss. 1978); ***Southern Farm Bureau Casualty Ins. Co. v. Nat'l Bureau of Casualty Underwriters,*** 254 Miss. 445, 181 So. 2d 154, 156 (1965); ***Johnson v. Arkansas Bd. of Examiners in Psychology****,* 808 S.W.2d 766, 768 (Ark. 1991).

Here this Court concludes the record more than substantially supports the findings of fact of the Board. Thus, the Board's decision rendered September 27, 1991, revoking Okonuren's certificate to practice medicine in the State of Mississippi, cannot, therefore, be labeled "arbitrary and capricious." Okonuren received adequate notice and opportunity for hearing, attended the hearing in person, was represented by counsel, and introduced evidence and testimony on his behalf. The action of the Board was based upon a properly certified document evidencing a "Final Sanction Notice" by the USDHHS, Office of Inspector General, excluding Okonuren as a provider of Medicare based upon a finding of his "failing to meet professionally recognized standards of health care." Therefore, as a matter of law, this Court affirms the Board's determination.

**AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS AND SMITH, JJ., CONCUR. BANKS, J., NOT PARTICIPATING.**